IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JAMES MORROW, STEPHEN STUART WATSON, AMANEE BUSBY, YUSELFF DISMUKES, LINDA DORMAN, MARVIN PEARSON, JENNIFER BOATRIGHT, RONALD HENDERSON, JAVIER FLORES, and WILLIAM PARSONS, and a Proposed Class of Other Similarly Situated Persons,<br>       Plaintiffs | § § § § § § § § § § § | |
| v. | § § | CIVIL ACTION NO.  2:08cv288 |
| CITY OF TENAHA DEPUTY CITY MARSHAL BARRY WASHINGTON, in his Individual and Official Capacity; CITY OF TENAHA MAYOR GEORGE BOWERS, in his Individual and Official Capacity; SHELBY COUNTY DISTRICT ATTORNEY LINDA K. RUSSELL, in her Individual and Official Capacity ; SHELBY COUNTY DISTRICT ATTORNEY INVESTIGATOR DANNY GREEN, in his Individual Capacity only; and SHELBY COUNTY PRECINCT 4 CONSTABLE RANDY WHATLEY, in his Individual and Official Capacity,<br>       Defendants | § § § § § § § § § § § § § § § § § § | JUDGE:  T. John Ward |

**PLAINTIFFS' THIRD AMENDED COMPLAINT**

INTRODUCTION

1.     Plaintiffs are individuals who were traveling on public roads in, or near, Tenaha, Texas.  Defendants are all local law enforcement officials in and around the City of Tenaha, Shelby County, Texas and the Mayor of Tenaha.  However, they have developed an illegal "stop and seize"

1

practice of targeting, stopping, detaining, searching, and often seizing property from, apparently non-white citizens and those traveling with non-white citizens, including the Plaintiffs and members of the proposed class who travel in, through, or near Tenaha. The Defendants undertake this practice without legal justification, in violation of the citizens' rights, not for any legitimate law enforcement purpose but to enrich their offices and perhaps themselves, by seizing and converting cash and other valuable personal property they can find during the course of the illegal stop and seize practice.

2. The Defendants' actions challenged herein are in violation of at least the 4th Amendment's prohibition against unreasonable searches and seizures and the 14th Amendment equal protection clause to the United States Constitution, made actionable by 42 U.S.C §1983.

3. Plaintiffs Morrow, Watson, Busby, Dismukes, Dorman, Pearson, Boatright, Henderson, Flores and Parsons on their own behalf and on behalf of a putative class of similarly situated persons, seek equitable relief sufficient to remedy the practices complained of, and any available legal relief, along with all costs of suit authorized by 42 U.S.C. § 1988.

## JURISDICTION

4. This Court has jurisdiction of these disputes pursuant to 28 U.S.C. § 1331.

## PARTIES

5. Plaintiff James Morrow is a United States citizen and a resident of Pine Bluff, Arkansas.

6. Plaintiff Stephen Stuart Watson is a United States citizen and a resident of Washington, D.C.

7. Plaintiff Amanee Busby is a United States citizen and a resident of Maryland.

8. Plaintiff Yuselff Dismukes is a United States citizen and a resident of Wisconsin.

9. Plaintiff Linda Dorman is a United States citizen and a resident of Ohio.

10. Plaintiff Marvin Pearson is a United States citizen and a resident of Ohio.

11. Plaintiff Jennifer Boatright is a United States citizen and a resident of Texas.

12. Plaintiff Ronald Henderson is a United States citizen and a resident of Texas.

13. Plaintiff Javier Flores is a United States citizen and a resident of Texas.

14. Plaintiff William Flores is a United States citizen and a resident of Texas.

15. The Plaintiffs seek certification of a class of similarly situated persons consisting of: (1) people who are, or appeared to be, members of racial or ethnic minority groups and those in their company, and (2) were or will be traveling in, through or near Tenaha since July 27, 2006, and (3) were, or are subject to being, stopped and detained and/or arrested by one or more of the Defendants without an articulable suspicion of criminal activity, to find valuable property or money.

14. Defendant Barry Washington is sued in his official capacity as a City of Tenaha Deputy Marshal, and in his individual capacity. Defendant Washington lives in Panola County, Texas. He is represented by G. Robert Alderman, Jr. who can be contacted at Zeleskey Cornelius et al., P O Drawer 1728 (1616 So. Chestnut), Lufkin TX 75902-1728 (936-633-4209).

15. Defendant George Bowers is at this time sued only in his official capacity as the Mayor of the City of Tenaha. He is represented by G. Robert Alderman, Jr. who can be contacted at Zeleskey Cornelius et al., P O Drawer 1728 (1616 So. Chestnut), Lufkin TX 75902-1728 (936-633-4209).

16. Defendant Linda K. Russell is sued in her official capacity as the District Attorney of Shelby County, Texas and in her individual capacity. She is represented by Tom Henson, who can be contacted at Ramey & Flock, 100 East Ferguson, Suite 500, Tyler TX 75702 (903-597-3301).

17. Defendant Danny Green is an investigator for the District Attorney of Shelby County and is sued in his individual capacity. He is represented by Robert Davis, who can be contacted at Flowers Davis, 1021 ESE Loop 323, Ste 200, Tyler TX 75701 (903-534-8063).

18. Defendant Randy Whatley is at this time sued in his official capacity as the Shelby County Precinct 4 Constable and in his individual capacity. He is represented by Robert Davis, who can be contacted at Flowers Davis, 1021 ESE Loop 323, Ste 200, Tyler TX 75701 (903-534-8063).

## COMMON FACTS

19. Each of the Plaintiffs, and each member of the putative class has the following circumstances in common:

   (a) they appeared to be a member of a racial or ethnic minority group, or were in the company of someone who appeared to be a member of a racial or ethnic minority group,

   (b) they were traveling in, through or near Tenaha, Texas, at some time since July 27, 2006,

   (c) they were, or are subject to being, stopped, detained, arrested, questioned and/or their vehicle was searched by one, or more, Defendants, without articulable suspicion of criminal activity to determine whether they had cash money or any other valuable property pursuant to the Defendants' policy and practice of doing so, and then taking it for the Defendants' own use and purposes.

## MORROW FACTS

20. Plaintiff Morrow is a black African American.

21. On or about August 31, 2007, Plaintiff Morrow was driving through Tenaha, Texas, when he was observed and stopped by Defendant Washington.

22. Defendant Washington had no legal justification for the stop.

23. Defendant Washington ordered Plaintiff Morrow to get out of his car.

24. Defendant Washington had no legal justification for ordering Plaintiff Morrow to get out of his car.

25. Defendant Washington interrogated Plaintiff Morrow.

26. Defendant Washington had no reasonable legitimate reason for interrogating Plaintiff Morrow.

27. Defendants Washington and Whatley discovered no evidence suggesting any criminal activity as a result of the searches and interrogation.

28. Defendant Washington asked Plaintiff Morrow if he had any money.

29. Defendant Washington was without any reasonable legal reason for asking Plaintiff Morrow about whether he had money.

30. Plaintiff Morrow conceded he had money in the car, and indicated where.

31. Defendant Whatley arrived with a dog. The Defendants then searched the vehicle Morrow was driving.

32. Defendants Whatley and Washington had no legal justification for searching the vehicle.

33. Defendants Washington and Whatley then seized, without legal justification, approximately $3969 as well as two cell phones from Plaintiff Morrow.

34. Defendant Washington arrested Plaintiff Morrow, for what he claimed was "money laundering." Defendant Washington had no reason to believe Plaintiff Morrow was guilty of money laundering.

35. Defendants Washington and Russell told Plaintiff Morrow they would hold him prisoner and prosecute him for money laundering unless he would agree to forfeit the $3969. Under this duress and these threats, Defendants Washington and Russell released Plaintiff Morrow and warned him to not hire a lawyer or try to get his money back.

36. Defendants never had reason to, or really intended to, prosecute Plaintiff Morrow. Any charges have been dismissed, "in the interest of justice."

37. Plaintiff Morrow had to pay a lawyer $3500 in reasonable fees to obtain the dismissal of the bogus money laundering charges and to obtain the return of the $3969 Defendants took from him.

38. Defendants had no articulable suspicion of criminal activity to justify their treatment of Plaintiff Morrow. To the extent Defendants manufacture such suspicion, it has no credibility.

### WATSON and BUSBY FACTS

39. Plaintiffs Stephen Stuart Watson and Amanee Busby are black African Americans.

40. On or about September 13, 2007 Defendant Washington observed Plaintiffs Watson and Busby traveling on Highway 59 in, or near, the City of Tenaha. Plaintiffs Watson and Busby were passengers in a car driven by another African American. Defendant Washington stopped the vehicle.

41.     Defendant Washington had no legal justification for stopping the vehicle in which Plaintiffs Watson and Busby were riding..

42.     Defendant Washington then detained Plaintiffs Watson, Busby and the driver for a significant amount of time.

43.     Defendant Washington had no legal justification for detaining Plaintiffs Watson, Busby or the driver.

44.     Defendant Washington interrogated Plaintiffs Watson, Busby and the driver without any legitimate reason or legal justification.

45.     Plaintiffs Watson, Busby and the driver explained that they are in the restaurant business, on vacation, and checking out restaurants, and considering opening another restaurant.

46.     Without any legitimate reason or legal justification Defendant Washington sought to search the vehicle.  Fearing a shakedown, Plaintiffs Watson, Busby and the driver refused to consent to Defendant Washington making an unexplained search of their car, and told him he needed to get a warrant.

47.     Defendant Washington continued to detain Plaintiffs Watson, Busby and the driver. Instead of getting a warrant he summoned Defendant Whatley, who claimed that his dog "alerted" on the vehicle.

48.     Defendants Washington and Whatley continued to detain Plaintiffs Watson, Busby and the driver, without legal justification, while Defendant Washington began searching Plaintiffs Watson's and Busby's, and their driver's, luggage.

49.     Defendant Washingtopn found and took over $50,000, five cell phones, an I-pod, and the vehicle, from Plaintiffs Watson, Busby and the driver.

50. Defendant Washington had no legal justification for taking the money and property.

51. Defendants Washington and Whatley then arrested Plaintiffs Watson, Busby and their driver.

52. Defendants Washington and Whatley had no legal justification for the arrests.

53. Defendants Washington, Whatley, Russell and Green took the money and property intending to divide it up.

54. Defendants threatened Plaintiffs Watson, Busby and the driver with bogus and trumped-up criminal charges, but no charges were ever brought against Plaintiffs Watson and Busby, but their driver was initially charged with money laundering – charges that were not pursued.

55. Defendants initiated bogus forfeiture proceedings against Plaintiffs Watson, Busby and the driver. At considerable expense, Plaintiffs Watson, Busby and the driver obtained the dismissal of the bogus forfeiture proceeding.

56, Defendants had no articulable suspicion of criminal activity to justify their treatment of Plaintiffs Watson or Busby. To the extent Defendants manufacture such suspicion, it has no credibility.

## DISMUKES FACTS

57. Plaintiff Dismukes is a black African American.

58. On or about January 11, 2008 Defendant Washington observed Plaintiff Dismukes traveling on Highway 59 in, or near, the City of Tenaha, Texas. Defendant Washington stopped Plaintiff Dismukes and friends he was traveling with.

59. Defendant Washington had no legal justification for stopping Plaintiff Dismukes and his friends.

8

60.     Defendants Washington and Whatley detained Plaintiff Dismukes and his friends for a significant amount of time.

61.     Defendants Washington and Whatley had no legal justification for their detention of Plaintiff Dismukes and his friends.

62..    Defendants Washington and Whatley interrogated Plaintiff Dismukes and his friends about whether they had any cash money.

63.     Defendants Washington and Whatley had no legitimate reason to question Plaintiff Dismukes about their money.

64.     Without a warrant or other justification Defendants Washington and Whatley searched Plaintiff Dismukes, his friends and their vehicle.

65.     Without a warrant or other justification, Defendants Washington and Whatley took and seized in excess of $13,000 from Plaintiff Dismukes and his friends.

66.     Defendants Washington and Whatley had no real reason to think that Plaintiff Dismukes or his friends were engaged in any criminal activity.

67.     Defendants Washington and Whatley, with Defendant Russell, decided to charge Plaintiff Dismukes and his friends with money laundering and engaging in criminal activity.

68.     Defendants had no legitimate basis for the criminal charges, but did so only to facilitate their taking of money from Plaintiff Dismukes and his friends.

69.     Defendants were unable to get a grand jury to indict Plaintiff Dismukes or his friends on the bogus criminal charges, and the charges were dismissed.

70. Defendants' actions in taking money from Plaintiff Dismukes and his friends, and bringing bogus criminal charges against them, caused Plaintiff Dismukes and his friends to reasonably incur legal expenses and costs to recover the wrongly taken money.

71. Defendants had no articulable suspicion of criminal activity to justify their treatment of Plaintiff Dismukes. To the extent Defendants manufacture such suspicion, it has no credibility.

### DORMAN and PEARSON FACTS

72. Linda Dorman and Marvin Pearson are black African Americans.

73. On or about April 18, 2007 Defendant Washington observed Plaintiffs Dorman and Pearson to be traveling on Highway 59 in or near Tenaha. Defendant Washington stopped Plaintiffs Dorman and Pearson.

74. Defendant Washington had no legal justification for the stop.

75. Defendant Washington detained Plaintiffs Dorman and Pearson for a significant amount of time and summoned Defendant Whatley.

76. Defendant Washington had no legal justification for detaining Plaintiffs Dorman and Pearson for a significant amount of time.

77. Defendants Washington and Whatley proceeded to search the vehicle Plaintiffs Dorman and Pearson had been travling in.

78. Defendants Washington and Whatley had no legal justification for searching the vehicle.

79. Defendants Washington and Whatley found, and took $4500 from these Plaintiffs.

80. Defendants Washington and Whatley, without legal justirication, arrested these Plaintiffs.

81. Defendants Washington and Whatley, in consultation with Defendants Russell and Green, illegally required these Plaintiffs to sign a "Waiver of Service" and "Agreed Final Judgment of Forfeiture" under threats of bogus criminal prosecution and imprisonment.

82. Defendants had no articulable suspicion of criminal activity to justify their treatment of Plaintiffs Dorman and Pearson. To the extent Defendants manufacture such suspicion, it has no credibility.

### BOATRIGHT and HENDERSON FACTS

83. Plaintiff Jennifer Boatright is white; Plaintiff Ronald Henderson is a black African American.

84. On or about April 26, 2007 Defendant Washington observed Plaintiffs Boatright and Henderson traveling together on Highway 59 in or near Tenaha. Defendants Washington and Whatley stopped them.

85. Defendants Washington and Whatley had no legal justification for stopping Plaintiffs Boatright and/or Henderson.

86. Defendants Washington and Whatley detained Plaintiffs Boatright and Henderson for a significant amount of time.

87. Defendants Washington and Whatley had no legal justification for detaining Plaintiffs Boatright and Henderson for a significant amount of time.

88. Defendants Washington and Whatley interrogated Plaintiffs Boatright and Henderson about whether they had any cash.

89.     In response to the questions, Plaintiffs Boatright and Henderson conceded that they had about $6,000 in cash. Defendants Washington, Whatley, Green and Russell then seized approximately $6,037 from them, along with a roadside assistance kit.

90.     Defendants had no legal justification for seizing the money or property from Plaintiffs Boatright and Henderson.

91.     Defendants had no reason to believe that Plaintiffs Boatright or Henderson had committed any crime.

92.     Defendant Washington arrested Plaintiffs Boatright and Henderson, escorting them to his office.

93.     Defendant Washington had no legal justification for arresting Plaintiffs Boatright and Henderson.

94.     Defendants threatened to bring money laundering charges against Plaintiffs Boatright and Henderson, and to take their children and put them in foster care if Plaintiffs Boatright and Henderson would not sign papers prepared by Defendants to authorize the seizure. Under coercion, Plaintiffs Boatright and Henderson complied.

95..    Defendants have not brought any criminal charges against Plaintiffs Boatright and/or Henderson.

96.     Defendants had no articulable suspicion of criminal activity to justify their treatment of Plaintiffs Boatright and Henderson. To the extent Defendants manufacture such suspicion, it has no credibility.

## FLORES AND PARSONS FACTS

97. Javier Flores is Hispanic but appears to some to be African American.

98. Williams Parsons is of Macedonian descent but appears to some to be Hispanic.

99. On or about July 23, 2008, Plaintiffs Flores and Parsons were driving through or near Tenaha, Texas, on Highway 59 in a rented car with out-of-state license plates.

100. Defendant Whatley stopped Flores' and Parsons' vehicle without legal justification or ever charging them with a traffic offense.

101. Defendant Whatley detained Flores and Parsons on the side of the road, interrogating them without legal justification.

102. Within a few minutes of the stop and without any legal justification, Whatley asked Parsons, and eventually Flores, if they have "large sums of currency" or "cash."

103. Suspecting a shake-down, and being unsure what constituted a large sum, Parsons and Flores reasonably did not tell Whatley about all of their money.

104. Whatley walked a dog around Parsons' and Flores' car, past its rear bumper three times, twice the dog sat down near the rear bumper. It is unclear why the dog sat on those occasions.

105. Whatley asked if he could search the car. When Parsons suggested that he needed to get a warrant to conduct a search, Whaley indicated that the dog was "the warrant" and had alerted to the odor of narcotics or marijuana on the car.

106. Without legal justification, Whatley proceeded to search the car.

107. Whatley went to the trunk of the car and rummaged through the luggage and dirty clothes until he found approximately $8400, which he took.

108. When Defendant Whatley started taking the money, Parsons asked why, if there

was some legal limit on the amount of money he could have. Whatley said the legal limit was $1500.

109.   With City of Tenaha Marshal Fred Walker, Defendant Whatley arrested Parsons and Flores, handcuffed them and took them to Whatley's office.

110.   Defendant Whatley had no warrant or legal justification to arrest Parsons or Flores.

111.   Defendant Whatley took other documents from Parsons and Flores and copied at least some of them.

112.   After taking the $8400 and other documents, Defendant Whatley, in consultation with Defendant Lynda Kay Russell, gave Parsons and Flores a copy of a receipt for the money, said they were charging Parsons and Flores with money laundering, and let Parsons and Flores go.

113.   On information and belief, Defendants were unable to get a Grand Jury to induct Flores or Parsons on the bogus money laundering charges.

114.   Flores and Parsons incurred legal fees of $5000 in getting Defendants to return the $8400 Defendants Whatley and Russell took from them.

115.   Defendants had no articulable suspicion of criminal activity to justify their treatment of Parsons and Flores. To the extent they manufactured articulable suspicion it is without credibility.

## CLAIMS

116.   Defendants' actions and omissions described above were undertaken under color of state law, although their actions represent an abuse of authority, making the Defendants liable under 40 U.S.C. § 1983.

117.    Plaintiff Morrow, and others similarly situated, have suffered harm and continue to suffer harm as a result of the Defendants' actions described above.

118.    Defendants' conduct described above constitutes violations of 4th and 14th Amendment rights to equal protection of the laws and to be free from unreasonable seizures.

## RELIEF SOUGHT

119..    Plaintiffs on their own behalf and others in the proposed class seek the full measure of equitable relief, including declaratory, injunctive and equitable monetary relief, and the full measure of legal monetary relief, including compensatory and punitive damages, consistent with the Court's rulings on class certification, to vindicate the rights of the Plaintiffs and prohibit the Defendants' wrongful conduct in the future.

120.    Plaintiffs seek all costs of suit authorized by 42 U.S.C. § 1988.

Respectfully submitted,

/S/ DAVID J. GUILLORY_____
David J. Guillory
State Bar No. 08596400
510 Ochiltree Street
Nacogdoches, Texas 75961
Phone: (936) 559-9600  Fax:(936) 715-9339
Email:   david.guillory@lonestarlegal.org
            and
/S/ TIMOTHY B. GARRIGAN_____
Timothy B. Garrigan
State Bar No.  07703600
Stuckey, Garrigan & Castetter
P. O. Box 631902
Nacogdoches, Texas 75963-1902
Phone:(936) 560-6020 Fax:(936) 560-9578
Email:   tim@sgclaw.org

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

       I hereby certify that I have served all parties of record in this case including the following with a true and correct copy of the foregoing PLAINTIFF'S THIRD AMENDED COMPLAINT by sending same electronically and/or via FAX/hand delivery/U. S. mail, postage prepaid:

    Tom Henson
    Ramey & Flock
    100 East Ferguson, Suite 500
    Tyler TX 75702

    Robert S. Davis / Chad C. Rook
    Flowers Davis
    1021 ESE Loop 323, Ste 200
    Tyler TX 75701

    G. Robert Alderman, Jr.
    Zeleskey Cornelius et al.
    P O Drawer 1728
    Lufkin TX 75902-1728

on this the 17th day of February, 2010.

                                                              /S/ TIMOTHY B. GARRIGAN
                                                              _____
                                                               Attorney for Plaintiffs