IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JAMES MORROW, and a Proposed Class of Other Similarly Situated Persons<br>    Plaintiffs,<br><br>v.<br><br>CITY OF TENAHA DEPUTY CITY MARSHAL BARRY WASHINGTON, et al<br>    Defendants. | § § § § § § § § § § | CIVIL ACTION NO. 2-08-cv-288-TJW |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion for Protection Against the Dissemination of Pretrial Discovery (Dkt. No. 188). In their motion, Defendants move for protection from dissemination of pretrial discovery, including video of depositions, deposition transcripts, specific documents produced in disclosure, and information gathered therefrom. The Defendants also move for a protective order prohibiting Plaintiffs' counsel from speaking to the media about this case. Having considered the arguments of the parties and the applicable law, the Court is of the opinion that Defendants' motion should be DENIED.

### I. Background

Plaintiffs bring this action against five law enforcement officers and the mayor of Tenaha. Tenaha is located in Shelby County, Texas. The Plaintiffs allege that the officers stopped the Plaintiffs in traffic because of their race or ethnicity and unreasonably seized their money or property in violation of their constitutional rights. The Plaintiffs further allege that there is a widespread pattern and practice of doing so in the city of Tenaha. The Court entered a protective order in this case on August 25, 2010 (Dkt. No. 183). Discovery in this case has been limited to

1

the issue of class certification, and all defendants have been deposed. Pursuant to the protective order, the Defendants have designated the deposition transcripts and videos of defendants and third parties as confidential. Plaintiffs, however, dispute the confidential designation of the deposition transcripts and wish to comply with a request from a local news station for a copy of the transcript of defendant Russell's deposition. In their motion for protection, Defendants request that the Court enter a protective order prohibiting Plaintiffs from disseminating any deposition transcripts obtained in this case to the public or the press and from further commenting to the press regarding the case.

Defendants argue that a protective order is necessary because at least two of the named defendants are targets of an investigation by the Department of Justice involving the allegations giving rise to this lawsuit and the remaining defendants have been investigated and questioned by the Department of Justice. Defendants also argue that allowing the dissemination of the deposition transcripts would have a chilling effect on the discovery process in this case and would allow the attorneys to play media games, unjustly influence the jury pool, and stifle the information obtained during depositions. Additionally, the Defendants contend that a protective order is necessary to ensure a fair and unbiased jury pool. Finally, Defendants assert that Plaintiffs' counsel made comments to a local news station following defendant Russell's deposition regarding the number of times that he invoked the Fifth Amendment during his deposition and implied that pleading the Fifth Amendment was a sign of guilt. Accordingly, Defendants also seek an order prohibiting Plaintiffs' counsel from making any comment to the media about this case.

Plaintiffs, however, argue that Defendants have not demonstrated the good cause required

2

for a protective order under Federal Rule of Civil Procedure 26(c) or explained what portions of the deposition transcripts they believe should be confidential and why. Plaintiffs also argue that they have an indirect interest in the media coverage of this case because, as a result of the media coverage, witnesses and potential class members have come forward. Additionally, Plaintiffs contend that the media coverage may have had positive effects by precipitating investigations into the actions of the defendants and possibly prodding public agencies into addressing the practices complained of. Finally, Plaintiffs argue that the public has a strong interest in police misconduct and in official corruption and violations of civil rights by public officials that argues in favor of making the deposition transcripts available to the media and the public.

## II. Legal Standard

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir.1985). However, the Federal Rules of Civil Procedure empower a district court to limit the use of discovered documents or information. FED. R. CIV. P. 26(c); *Harris*, 768 F.2d at 684. For good cause, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . .." FED. R. CIV. P. 26(c)(1)(G). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)). The district court has broad discretion in determining whether to grant a motion for a protective order. *Harris*, 768 F.2d at 684. "The trial court is in the best position to weigh fairly the competing needs and interests of

3

parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Accordingly, the standard of review of a trial court's decision whether or not to grant a protective order is abuse of discretion. *Harris*, 768 F.2d at 684.

### III. <u>Analysis</u>

Although the Defendants have designated all of the deposition transcripts in this case as confidential, the Defendants have made no argument that the deposition transcripts are in fact confidential under the definition of confidentiality contained in the protective order. It appears that the confidential designation of the deposition transcripts rests entirely on Defendants' contention that release of the transcripts will result in embarrassment to the Defendants and unfairly prejudice the jury pool. Accordingly, Defendants focus their argument, and Plaintiffs focus their response, on whether good cause exists to prohibit the dissemination of the deposition transcripts to the media and the public.

Even where there is a public interest in the information gained through discovery, "[i]t does not necessarily follow . . . that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Seattle Times*, 467 U.S. at 31. Additionally, the Supreme Court has made it clear that there is no First Amendment right of access to information made available only for the purpose of trying a lawsuit and that continued court control over information obtained through discovery does not raise the same specter of government censorship that such control might suggest in other situations. *Id.* at 32. The rule in the Fifth Circuit is that "[a] party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris*, 768 F.2d at 683-84. However, if the party requesting the protective order shows that "good cause" exists to limit dissemination of pretrial

4

discovery, then "the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained." *Id*. at 684. Consequently, the Court must determine whether Defendants have demonstrated that good cause exists to prohibit the dissemination of the deposition transcripts in this case.

Defendants argue that dissemination of the deposition transcripts will (1) result in embarrassment and harassment by the media, (2) allow the media to manipulate a defendant's testimony by producing, publishing or otherwise disseminating mere excerpts of the deposition which would mislead the public and, (3) unfairly prejudice the jury pool. The Court will consider each of these contentions in turn.

### A. Embarrassment to the Defendants and Harassment by the Media

First, the Defendants do not support their motion for protective order with any affidavits or other evidence that might provide support for their allegations that release of the deposition transcripts to the media would result in harassment by the media or severe embarrassment of the Defendants. Defendants state that this case has garnered media attention and that one reporter attempted to attend the deposition of defendant Russell, but they offer no facts to suggest that the media attention has been or could potentially become harassing. As discussed above, a showing of good cause requires "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra*, 134 F.3d at 306.

Additionally, numerous courts have held that mere embarrassment, without a demonstration that the embarrassment will be particularly serious or substantial, is not enough to demonstrate good cause for a protective order. *Flaherty v. Seroussi*, 209 F.R.D. 295, 299-300

5

(N.D.N.Y. 2001) ("To rise to the level of good cause, any such embarrassment must be substantial"); *Welsh v. City and County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) ("Mere embarrassment by the release of information is insufficient to constitute serious harm"); *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order"); *Hawley v. Hall*, 131 F.R.D. 578, 585 (D. Nev. 1990), *superseded on other grounds by statute*, Fed.R.Civ.P. 5(d) (amended 2000) ("The defendants have not demonstrated a substantial likelihood of serious embarrassment that would constitute Rule 26(c) good cause") (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986), *cert. denied*, 484 U.S. 976 (1987)).

Courts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern. For example, in a civil rights action against a municipality, the mayor, and one other public official, the Northern District of New York denied the defendant mayor's motion for a protective order that would prohibit the plaintiff from disseminating the mayor's videotaped deposition to the press. The court held that "[t]he mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of Mayor Seroussi's deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of protective order." *Flaherty*, 209 F.R.D. at 299. The court went on to state that, "[i]n cases where issues of strong public interest favoring the free dissemination of discovery materials are at play, the normal practice of not according discovery materials the same degree of access as those filed in connection with trial gives way to a presumption of open inspection." *Id*. In reaching its

6

decision, the court balanced the function of the court in providing a means for the efficient and just resolution of private disputes and the "strong, legitimate public interest on the part of the citizenry to have unfettered access to court proceedings, particularly when they involve elected officials and the performance of their governmental responsibilities."  *Id*. at 300.

Similarly, in *Hawley v. Hall*, the District of Nevada held that a mayor and other public officials named as defendants in a civil rights action failed to establish "good cause" for sealing deposition transcripts and otherwise preventing public dissemination of information gained by the parties during the discovery process.  131 F.R.D. at 584-85.  The defendants argued that a protective order was necessary to protect the public officials from "annoyance, embarrassment or oppression" arising from the disclosure of private, personal, or confidential information and to insure the parties' right to a fair trial.  *Id.* at 584.  However, after considering the Supreme Court's analysis in *Seatle Times*, the court held that the defendants failed to demonstrate a substantial likelihood of serious embarrassment beyond that normally attendant upon release of information not intended to be for public consumption and stated that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id*. at 584-85 (quoting *Cipollene*, 785 F.2d at 1121).  "The public interest in the conduct of public officials, elected and appointed, outweighs the minimal harms tendered by the defendants as good cause in this case."  *Id*. at 585.

As in *Flaherty* and *Hawley*, this case involves issues of substantial public concern regarding public officials—including the mayor, police officers, and the district attorney's office in the city of Tenaha—in the exercise of their official duties.  Plaintiffs correctly argue that the public has a strong interest in police misconduct and in official corruption and violations of civil

7

rights by public officials. Accordingly, the Court finds that Defendants' unsubstantiated allegations that release of the deposition transcripts in this case will result in embarrassment to the Defendants in not enough to demonstrate good cause for a protective order, especially in light of the strong public interest in the conduct of public officials.

Defendants also make reference to the fact that two of the defendants may be under investigation by the Department of Justice and that the remaining defendants have been questioned by the Department of Justice as a reason for the necessity of issuing a protective order in this case. However, the Defendants offer no facts to support these statements. The Court is aware that Defendants have demonstrated in previous motions that defendants Russell and Green were under criminal investigation by the Department of Justice at one time. The Defendants do not, however, offer any facts in the current motion to suggest that the investigation by the Department of Justice is ongoing. Furthermore, the Defendants make no showing and offer no facts to suggest that the dissemination of the deposition transcripts in this case will have any impact on the Department of Justice's investigation if it is, in fact, ongoing. As discussed in an earlier Court order denying defendants Russell's and Green's request for a stay of discovery pending the outcome of the Department of Justice's investigation, none of the Defendants are currently under indictment and the Defendants have offered no evidence that indictments against any of them are imminent or even certain. Additionally, this is not a case where the Department of Justice is attempting to take advantage of a civil lawsuit to conduct a criminal investigation and evade any limits on criminal discovery or pressure the defendants to waive their Fifth Amendment rights. This case was brought by private plaintiffs and the Department of Justice has not, to the Court's knowledge, attempted to direct the Plaintiffs' investigation of the claims in this case or even requested copies

of the deposition transcripts at issue. *See Alcala*, 625 F.Supp.2d at 402 ("the potential for prejudice to a criminal defense is diminished where private parties, and not the government, are the plaintiffs in the civil action"). Thus, the Court is not persuaded that the mere fact that two of the defendants *may* be under investigation by the Department of Justice and that the remaining defendants *may* have been questioned by the Department of Justice is enough to demonstrate good cause for a protective order prohibiting dissemination of deposition transcripts, especially when Defendants have made no showing that the dissemination of the deposition transcripts will prejudice the Defendants or interfere with or affect the Department of Justice's investigation in any way.

### B. The Release of Deposition Excerpts will Mislead the Public

Second, Defendants argue that dissemination of the deposition transcripts will allow the media to manipulate a defendant's testimony by producing, publishing, or otherwise disseminating mere excerpts of the deposition transcripts which would mislead the public. The Southern District of New York addressed a similar issue in *Condit v. Dunne*, 225 F.R.D. 113 (S.D.N.Y. 2004). In *Condit*, the court denied the plaintiff's request for a protective order banning the dissemination of the video transcript of his deposition where the embarrassment to the plaintiff was that the deposition might be misrepresented by the media through the use of sound bites. *Id.* at 118. The court held that, "[w]hile sound bites are a recognized Achilles heel of videotaped depositions, the fact that the media may edit a tape that may or may not be released by the parties does not warrant a protective order barring all public dissemination of the videotape in this case." *Id.* (internal citations omitted). Under the present circumstances, the Court is not convinced that a

substantial risk exists that the public will be mislead by the release of deposition excerpts by the press or that this potential risk outweighs the strong public interest in this case.

**C. Unfairly Prejudice the Jury Pool**

Finally, Defendants argue that release of the deposition transcripts to the public will unfairly prejudice the jury pool and deny Defendants a fair trial. Defendants also argue that the jury pool will be unfairly prejudiced if Plaintiffs' counsel is allowed to continue discussing the case with the press. Defendants point to comments of Plaintiffs' counsel after defendant Russell's deposition in which Plaintiffs' counsel commented on the frequency of defendant Russell's invocation of his Fifth Amendment rights. Defendants also argue that Plaintiffs' counsel suggested that Russell's reliance on the Fifth Amendment was indicative of his guilt. Defendants base their argument on the following statement by Plaintiffs' counsel: "If a person didn't do anything wrong, you expect them to say, 'No, I didn't do anything wrong,' not invoke their right for the fifth amendment." The Court is not convinced that the dissemination of the deposition transcripts will result in a tainted jury pool in this case. Although there has been some moderate media attention focused on this case, the Court does not believe, nor have the Defendants offered any evidence to suggest, that the media attention has been extensive, widespread, or excessive. Similarly, the Court is not convinced that the comments made by Plaintiffs' counsel after defendant Russell's deposition rise to the level of being abusive or pose a substantial risk of unfairly prejudicing the jury pool. Accordingly, the Court finds that the Defendants' allegations of an impaired right to a fair trial based on dissemination of the deposition transcripts at issue or the comments of Plaintiffs' counsel are unsubstantiated and extremely remote. To the extent that some potential jurors may be exposed to information regarding this case through media coverage,

any potential prejudice to either party can be eliminated by a thorough *voir dire* of the jury panel. *See Hawley*, 131 F.R.D. at 585 (the court held that to the extent that there was dissemination of the defendant mayor's deposition transcript, the defendant's right to a fair trial could be guaranteed by vigorous *voir dire* of potential jurors).

The Defendants also appear to argue that the jury in any potential criminal proceedings against a defendant in this case may be tainted by dissemination of the deposition transcripts at issue as well as by the public statements made by Plaintiffs' counsel. The Court is not convinced, at this time, that there is a substantial risk of tainting a potential criminal jury pool. No defendant is currently under indictment, and the Defendants have produced no evidence that an indictment of any defendant is imminent. In addition, the media coverage of this case has not been extensive. As discussed above with respect to the jury pool in the present case, any potential taint to the jury pool in a potential criminal case may be remedied through *voir dire*. However, the Court may consider revisiting the issue of dissemination of discovery obtained in this case should a criminal indictment issue against one or more defendants or should the media interest in this case substantially increase. This order is strictly limited to the Court's management of this case and should not be construed as making any comment as to the appropriateness of handling discovery issues, or any other issues, in any case resulting from a potential indictment of one or more of the defendants in this case.

### IV. Conclusion

For the reasons set forth above, the Court hereby DENIES Defendants' Joint Motion for Protection Against the Dissemination of Pretrial Discovery (Dkt. No. 188).

IT IS SO ORDERED.

11

SIGNED this 5th day of October, 2010.

                                          _____
                                          T. JOHN WARD
                                          UNITED STATES DISTRICT JUDGE