**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **JAMES MORROW, et al. and a** | : | |
| **Certified Class of Other Similarly** | : | |
| **Situated Persons,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Civil Action No. 2:08-cv-288-JRG** |
| | : | **Judge Gilstrap** |
| **CITY OF TENAHA DEPUTY** | : | |
| **CITY MARSHAL BARRY** | : | |
| **WASHINGTON, in his individual** | : | |
| **and official capacity, et al.,** | : | |
| **Defendants** | : | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF THE
CLASS ACTION CONSENT DECREE, APPROVAL OF NOTICE,
AND FAIRNESS HEARING**

This Joint Motion for Preliminary Approval of the Class Action Consent Decree,

Approval of Notice, and Fairness Hearing is respectfully filed, through counsel, by Plaintiffs

James Morrow, Javier Flores and William Parsons, the Court-designated class representatives,

and the class certified by this Court's Order dated August 29, 2011 (collectively, "Plaintiffs"),

and Defendants the City of Tenaha Deputy City Marshal Barry Washington, in his individual and

official capacities (who has since resigned from office), the City of Tenaha Mayor George

Bowers, in his official capacity only (who is the former mayor), the Shelby County District

Attorney Lynda K. Russell, in her individual and official capacities (who has since resigned from

office), the Shelby County District Attorney Investigator Danny Green, in his individual and

official capacities (who has since retired), and the Shelby County Precinct 4 Constable Randy

Whatley, in his individual and official capacities (who has since resigned from office)

(collectively, "Defendants").  For purposes of this Joint Motion and the proposed Consent

1

Decree, Shelby County is bound as a Defendant via the County Judge Rick L. Campbell, or his successor, in his official capacity; the City of Tenaha is bound as a Defendant via the Mayor Orinthia Johnson, or his successor, in his official capacity; and the Shelby County District Attorney's Office is bound as a Defendant via (resigned) Shelby County District Attorney Lynda K. Russell, or her successor, in her official capacity, only to the extent permitted by the Texas Constitution and Texas law.  The parties respectfully request that the Court:

(a) Grant preliminary approval of the proposed Consent Decree (attached hereto as Exhibit 1);

(b) Approve the Notice to the Certified Class about the proposed Consent Decree (attached hereto as Exhibit 2), and the method of notifying the class of the proposed Consent Decree;

(c) Schedule a hearing on this Joint Motion, if the Court deems appropriate[1];

(d) Set a schedule for the Fairness Hearing and other appropriate dates; and

(e) After the Fairness Hearing, grant final approval to the proposed Consent Decree.

---

[1] Please note that counsel for the parties do not believe that a hearing on this Joint Motion is necessary, but counsel would of course be willing to participate in any hearing set by the Court.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **JAMES MORROW, et al. and a** | : | |
| **Certified Class of Other Similarly** | : | |
| **Situated Persons,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Civil Action No. 2:08-cv-288-JRG** |
| | : | **Judge Gilstrap** |
| **CITY OF TENAHA DEPUTY** | : | |
| **CITY MARSHAL BARRY** | : | |
| **WASHINGTON, in his individual** | : | |
| **and official capacity, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM IN SUPPORT OF THE
JOINT MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION
CONSENT DECREE, APPROVAL OF NOTICE, AND FAIRNESS HEARING**

Plaintiffs and Defendants[2] jointly submit this Memorandum in Support of the Joint

Motion for Preliminary Approval of the Class Action Consent Decree, Approval of Notice, and

Fairness Hearing.  For the reasons articulated in the motion and this supporting memorandum,

the parties respectfully request that the Court promptly grant preliminary approval of the Consent

Decree, approval of class notice procedures, and an order establishing dates for a Fairness

Hearing.

**STATEMENT OF FACTS**

**A.  Nature of the Case**

Plaintiffs filed this case in 2008 to challenge the Defendants' alleged illegal "stop  and

seize" practice of targeting, stopping, detaining, searching, and often seizing property from

---

[2]  Unless otherwise noted, capitalized terms have the same meaning as defined in the Consent
Decree.

individuals who are, or appear to be, members of a racial or ethnic minority and their passengers. (Class Certification Opinion and Order, Aug. 29, 2011, Dkt. 233, p. 2.)  The evidence demonstrates that this "interdiction program" began in 2006, and Plaintiffs allege that it is ongoing.  (*Id.* at 3.)  According to Plaintiffs, Defendants targeted members of the proposed class for traffic stops because of their race or ethnicity and then subjected them to detention, arrest, or search and seizure without legal justification and in violation of their constitutional rights.  (*Id.*)  Plaintiffs further allege that Defendants instituted the interdiction program, not for legitimate law enforcement purposes, but in order to enrich their offices and themselves by seizing and converting cash and other valuable personal property they could find during the course of the illegal stop and seize practice.  (*Id.*)

The Defendants deny these allegations and deny that they violated the constitutional rights of the named Plaintiffs or the class as a whole.

Plaintiffs initially sought class treatment of Fourth Amendment search and seizure claims, Fourteenth Amendment Equal Protection claims, and claims for monetary relief.  The Court only certified the plaintiff class for Fourteenth Amendment Equal Protection claims for injunctive and declaratory relief.  (*Id.* at 57.)  The Defendants sought a discretionary interlocutory appeal of the class certification pursuant to Federal Rule of Civil Procedure 23(f) which was denied, and then denied again when the Defendants asked the Fifth Circuit Court of Appeals to rehear the request.

### B.  Proposed Settlement Agreement

After extensive negotiations—including but not limited to three full-day mediation sessions conducted by Kip Glasscock (a professional mediator) and multiple full-day all-counsel meetings—which spanned about five months from October 2010 to July 2012, the parties

reached a settlement that will dispose of this action.  The terms of the parties' settlement are embodied in the Consent Decree.  *See* Exhibit 1.  The purposes animating the Consent Decree include efficiency, avoiding uncertainty, ending alleged racial profiling (including any alleged incentives and alleged practices that may result in alleged racial profiling), and concluding the litigation.  *Id.* at § II.  The Consent Decree provides Plaintiffs and the Certified Class with complete injunctive relief and confers significant benefits on the Plaintiffs and the Certified Class.  The Consent Decree also benefits Defendants by requiring accurate records of traffic stops that will readily contradict any false accusations that an officer abused his or her authority or violated constitutional rights.  The key terms of the Consent Decree include the following:

- Any evidence gathered in a way that does not comply with all the provisions of the Consent Decree shall be presumptively inadmissible as evidence in any court or other proceeding adverse to the person stopped.  *Id.* at § III.B.3.

- Defendants shall adopt an impartial policing policy.  *Id.* at § III.A.

- All traffic stops conducted by Defendants shall be mechanically recorded by both video and audio recordings, including:  the use of the pre-event capabilities to capture the reason for the stop, and record the location, time, date, speed, the identity of the officer(s) and agency operating the vehicle, and any radar readings pertinent to the stop.  The recordings shall also capture any canine sniffs, searches, seizures, detentions, and to the extent reasonable, arrests, resulting from a traffic stop.  All oral communication and interaction with the person being stopped must be captured in the recordings.  If Miranda rights are required in a specific situation by federal law, the recitation of his or her Miranda rights shall be mechanically recorded.  *Id.* at §§ III.B.5, III.G.4.

- Defendants shall maintain written documentation with details about the traffic stop, detention, canine sniff, search, seizure, and/or forfeiture.  *Id.* at §§ III.B.6, III.C.2, III.D.7, III.E.4, III.F.3, III.G.3, III.H.1.

- Defendants shall make contemporaneous reports to dispatch for traffic stops, detentions, canine sniffs, searches, seizures, and arrests.  Officers must report the basis for their actions before making contact with a motorist and request back-up before conducting any search.  *Id.* at §§ III.B.8, III.C.1, III.D.4, III.E.1.

- Traffic stops for violations punishable by issuance of a traffic ticket are presumed to be 15 minutes or less.  *Id.* at § III.B.10.

- Defendants stipulate that they do not utilize canines for any aspect of traffic stops.  If a Defendant wants to use a canine, that defendant must first notify the Monitor and Plaintiffs' counsel.  *Id.* at §§ III.D.1, III.D.10

- A canine sniff is allowed only when supported by reasonable suspicion of criminal activity.  *Id.* at § III.D.3.

- If a Defendant uses a canine, certification and training requirements apply for use of the canine, and performance reviews are required for the canine and canine handlers.  *Id.* at §§ III.D.8, III.D.9.

- Written notice shall be provided to a person before a canine sniff, before a consent search, and before the seizure of any property.  *Id.* at §§ III.D.5, III.E.2, III.F.4.

- Before conducting a consent search, an officer must provide oral and written advisement of rights, and obtain written and video and audio recorded consent for the search.  *Id.* at §§ III.E.2, III.E.3.

- The responsible defendant shall pay a person for the full costs of property damage resulting from a search, unless the search results in the discovery of contraband.  If a defendant disputes whether the damage was caused by a search, the Monitor makes a determination about liability.  *Id.* at § III.E.6.

- Officer must provide motorist with an inventory of all property seized.  *Id.* at § III.F.6.

- Protections apply for an individual whose assets are seized, including prohibitions on officers requesting that an individual waive his or her interest in the property, allowing individuals a meaningful opportunity to retain counsel to contest seizure, and permitting waiver of interest in property only in the presence of judicial officer or following representation by counsel.  *Id.* at §§ III.H.2, III.H.3, III.H.4, III.H.5.

- Defendants agree to track all revenue and donations from asset forfeiture incident to traffic stops.  *Id.* at § III.I.2.

- Shelby County Auditor will confirm that each expenditure of forfeiture revenue is compliant with Texas law.  If an expenditure is deemed non-compliant, the Auditor will notify the County Commissioner's Court and the Monitor.  *Id.* at § III.I.3.

- The Tenaha City Council, before the expenditure of any forfeiture revenue, shall confirm compliance with Texas law.  *Id.* at § III.I.4.

- All asset forfeiture revenue incident to traffic stops shall be donated to non-profit organizations, used for the audio and video equipment required by the Consent Decree, or used for training to meet the requirements of the Consent Decree.  *Id.* at § III.I.5.

- Defendants' officers shall undergo 4 hours of agreed upon/appropriate training within ninety (90) days of the entry of the Consent Decree and 4 hours of training per calendar

year.  The training shall cover compliance with racial profiling laws, search and seizure law, and provisions set forth in the Consent Decree.  *Id.* at III.J.

- Defendants shall institute internal review procedures every quarter to ensure compliance with Consent Decree.  *Id.* at § III.K.

- An impartial Monitor will address Defendants' compliance with the Consent Decree and all relevant laws.  *Id.* at § IV.

In addition to these terms, the Consent Decree provides that Defendants settle this case without an admission of liability, *id.* at § I.D; that the certification of the class in this case is not admissible for any purpose in any other litigation, *id.* at § VI.A; and that the Consent Decree may not be introduced as evidence for any purpose in any other proceeding other than the enforcement of the Consent Decree, *id.* at § VI.E.

In a separate agreement dated June 15, 2012, Defendants agreed to pay, and Plaintiffs' attorneys agreed to accept, $520,000 as attorneys' fees to Plaintiffs' attorneys, Timothy B. Garrigan, David J. Guillory, and Stephanie K. Stephens.  This payment covers work performed by those attorneys as of June 15, 2012, as well as their best efforts to negotiate a settlement agreement and obtain court approval of that agreement pursuant to Rule 23(e).  The June 15 agreement also requires Defendants to pay the costs of providing notice to the Certified Class in the event of a settlement, which costs will not exceed $30,000.  *See* Exhibit 3; *see also* Consent Decree at § V.B.  The parties' dispute over attorneys' fees was resolved as a result of a mediator's proposal that was accepted by the parties.  Plaintiffs' counsel represents that the payment of $520,000 was a substantial discount in Plaintiffs' counsel's lodestar.

Pursuant to Rule 23(e)(3), the parties hereby notify the Court that, other than as stated in the Consent Decree and the agreement dated June 15, 2012, there are no agreements requiring

disclosure that were "made in connection with the propos[ed] [settlement]."  *See* Fed. R. Civ. P. 23(e)(3).

### C.  Proposed Notice to the Class

The proposed notice form (the "Notice") is attached as Exhibit 2.  The Notice contains a summary of the terms of the Consent Decree, a description of the Certified Class, instructions on how to obtain further information about the Consent Decree, and procedures for objecting and appearing at the fairness hearing.  The Notice (in both English and Spanish) will be mailed to members of the Certified Class.  It also will be prominently displayed at the Tenaha City Office, located at 122 North Center Street, Tenaha, Texas, and the Shelby County Courthouse, located at 200 San Augustine Street, Center, Texas.  In addition, the Notice will be distributed to local community groups and disseminated to publications that may have an interest in the settlement of the case, and posted on the website for the American Civil Liberties Union (ACLU).

## ARGUMENT

### I.    Standard of Review

Settlements are "'highly favored'" and "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975)). The public policy favoring settlement agreements is particularly strong in complex class action litigation, where voluntary pretrial settlements obviate the need for expensive and time-consuming litigation. *See Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996).

When considering whether to grant preliminary approval to a class action settlement, the

Court's role is to review the proposal preliminarily to determine whether it suffers any obvious

defects that would preclude final approval and is otherwise sufficient to warrant public notice

and a hearing. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 427 n.2 (E.D. Tex. 2002);

Manual for Complex Litigation Fourth §§ 13.14, 21.633 (2004) (explaining that class notice

under Rule 23(c)(2) and settlement notice under Rule 23(e) may be combined). "If the proposed

settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class, does not

grant excessive compensation to attorneys, and appears to fall within the range of possible

approval, the court should grant preliminary approval." *In re OCA, Inc. Sec. & Derivs. Litig.*,

No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).

## II.     The Proposed Consent Decree Is Fair, Reasonable, and Adequate

The Court should preliminarily approve the Consent Decree because its terms are fair,

reasonable, and beyond adequate.  While the Court has discretion in evaluating preliminarily the

settlement's fairness and reasonableness, courts are generally guided at this stage by the same

factors that govern final approval of class action settlements: (1) the potential "existence of fraud

or collusion behind the settlement; (2) the complexity, expense, and likely duration of the

litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the

probability of [the] plaintiffs' success on the merits; (5) the range of possible recovery; and (6)

the opinions of class counsel, class representatives, and absent class members."  *Reed v. Gen.*

*Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).  These factors weigh in favor of the proposed

Consent Decree in this case.

### A.  There Is No Fraud or Collusion Behind the Consent Decree

The Consent Decree was negotiated between the parties at arm's length, and there

is no suggestion of fraud or collusion. "As a general principle, 'the courts respect the integrity of

counsel and presume the absence of fraud or collusion in negotiating the settlement, unless

evidence to the contrary is offered.'"  *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D.

616, 621 (S.D. Cal. 2005) (citing A. Conte and H. Newberg, *Newberg on Class Actions* § 11.51

(4th ed. 2002) at 158-59).  This case has been vigorously contested by both sides.  The parties

engaged in extensive briefing and discovery and have negotiated at arm's length a resolution of

the action, which resulted in the Consent Decree.  Furthermore, because the Consent Decree

provides for only injunctive relief and not monetary damages, there is no danger that the named

Class Members colluded with the Defendants to sacrifice the interests of the Certified Class for

their own monetary gain.

        As this Consent Decree was the result of the fair functioning of the adversarial process,

the first factor clearly supports preliminary approval.

### B.  The Complexity, Expense, and Likely Duration of Litigation Favors the Consent Decree

        This action presents several complex factual and legal issues that favor resolution of this

litigation through a class-wide settlement.  Early settlement in civil rights actions for injunctive

relief is generally favored because it avoids potentially protracted litigation involving remedial

decrees and reduces transaction costs.  *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir.

2004).

        Plaintiffs' counsel have undertaken significant factual and legal investigation to develop

the claims here, and full prosecution of a class action through trial would generate massive costs

for both sides.  Moreover, this litigation has already lasted more than four years, and without a

settlement it could last many more months (and possibly years if there are appeals).  Obtaining

timely relief is particularly important to the Certified Class to avoid subjecting the alleged harms

on themselves and others.

In sum, the Consent Decree allows both sides to obtain an expeditious resolution of

this case, saves the parties the needless expense of continued litigation, and provides benefits to

the Certified Class.  Accordingly, this factor weighs in favor of approving the Consent Decree.

### C.  Proceedings Are Advanced Sufficiently to Warrant Settlement

The Court should approve a settlement agreement if a case has advanced far enough to

enable the parties to assess the strength of their litigating positions.  *See In re Chicken Antitrust

Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982) (suggesting settlements should be approved

unless "the record shows unmistakably that the settlement was the product of uneducated

guesswork").  In this case, the parties have delved into extensive discovery, including eleven

depositions and the exchange of nearly 35,000 documents and video recordings of several

hundred traffic stops.  The parties have discussed the contested issues at length as part of their

settlement negotiations.  Critical legal issues in the case also have been litigated in pretrial

motions to dismiss, on various discovery issues, and on class certification.  Accordingly, both

sides are well-informed about their case and in a position to negotiate a fair settlement.

Consequently, this factor warrants preliminary approval of the Consent Decree.

### D.  The Probability of Success on the Merits Favors Settlement

"[A]bsent fraud or collusion, the most important factor [in evaluating settlements] is the

probability of the plaintiffs' success on the merits."  *Parker v. Anderson*, 667 F.2d 1204, 1209

(5th Cir. 1982).  This factor requires the Court to assess whether, in light of the inherent risks of

litigation, the proposed settlement is reasonable. *Reed*, 703 F.2d at 172.  Plaintiffs believe that

the evidence would allow them to prove that Defendants violated the Fourteenth Amendment

Equal Protection rights of the Certified Class.  While Plaintiffs believe they have a strong case,

they also recognize the potential legal and factual defenses asserted by Defendants in the case.

Accordingly, Plaintiffs believe a negotiated settlement that provides immediate relief is more

favorable to protracted litigation and an uncertain result in the future.  Similarly, Defendants

have asserted numerous defenses and have not admitted or conceded any wrongdoing, but they

also recognize the risks inherent in proceeding to trial.

**E.  The Range of Possible Recovery Strongly Favors Settlement**

The benefits for the Plaintiffs and Certified Class are well in line with the range of

possible recovery in light of the limited scope of the class certification.  (*See* Class Certification

Opinion and Order, Dkt. 233, p. 57.)  In an action for declaratory and injunctive relief, the range

of possible recovery is generally limited by the specific forms of relief requested in the

complaint.  *See Ault v. Walt Disney World Co.*, 254 F.R.D. 680, 688 (M.D. Fla. 2009). The

Consent Decree provides the Certified Class with the most important relief sought by the Third

Amended Complaint.  Specifically, in the Consent Decree, Defendants agree to implement or

modify various policies and procedures relating to traffic stops, detentions, canine sniffs,

searches, seizures, and forfeitures to ensure compliance with the Fourteenth Amendment Equal

Protection Clause.

Accordingly, the Consent Decree falls within the reasonable range of possible

recovery for Plaintiffs, and this fifth factor counsels for preliminary approval of the agreement.

**F.  Class Counsel Favors Settlement**

Class counsel is of the opinion that this Consent Decree is a favorable outcome for the

class.  Class counsel arrived at this conclusion after extensive investigation and negotiations with

Defendants' counsel.  Class counsel have experience litigating class actions and, based on their

expertise, believe that the Consent Decree provides a favorable result to the class.

   Thus, the sixth factor favors preliminary approval of the Consent Decree.

### III.   The Court Should Approve Parties Proposed Form and Method of Class Notice

   Rule 23(e)(1) requires that the court "direct notice in a reasonable manner to all class

members who would be bound by the proposal."  The Court has complete discretion in

determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as

well as method, particularly in a Rule 23(b)(2) class.  *Fowler v. Birmingham News Co.*, 608 F.2d

1055, 1059 (5th Cir. 1979); 7B Fed. Prac. & Proc. Civ. § 1797.6 (2009).  "A class settlement

notice need only properly identify the plaintiff class and generally describe the terms of the

settlement so as to alert members 'with adverse viewpoints to investigate and to come forward

and be heard.'"  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 298 (W.D. Tex. 2007) (citation

omitted).

   Here, the proposed notice procedures involve mailing the Notice (in both English and

Spanish) to all reasonably identifiable members of the Certified Class; prominently displaying

the Notice at the Tenaha City Office and the Shelby County Courthouse; distributing the Notice

to local community groups; disseminating it to publications that may have an interest in the

settlement of the case; and posting it on the ACLU's website.  These notification procedures are

specifically tailored to ensure that all reasonably identifiable members of the Certified Class will

be informed of the Consent Decree and their rights to object.  In particular, the parties believe

that efforts to mail the Notice to members of the Certified Class are reasonably calculated to inform them of the Consent Decree.[3]

Despite these extensive proposed notice procedures, counsel for the parties are aware that each and every member of the Certified Class is unlikely to actually receive the Notice.  The parties' records of class members' addresses are several years old, exhaustive records of all class members' addresses may not have been maintained, and the class members are now spread out across the country.  These practical difficulties should not pose an obstacle to this Court's approval of the proposed notice procedures.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1099, 1103-04 (5th Cir. 1977) ("Rule 23[] mandate[s] that absentee class members be given the best notice practicable under the circumstances . . . .") (internal quotation and citation omitted); *DeHoyos*, 240 F.R.D. at 296 ("Individual notice is not required when there is no reasonable way to sufficiently identify the class members.").  The extensive notice procedures that the parties intend to undertake are reasonably calculated to reach as many members of the Certified Class as possible.

The contents of the Notice are adequate to inform members of the Certified Class of their rights.  The Notice contains a description of the Certified Class, a summary of the litigation and the proposed Consent Decree, a discussion of how to obtain more information, and instructions about how to file an objection.  Class notices should generally provide only limited information so as not to confuse or overwhelm class members, and a simple summary of the settlement is particularly appropriate in class actions certified under Rule 23(b)(2).  *Id.* at 301.  The proposed Notice here provides ample information to enable members of the Certified Class to what relief

---

[3] "[S]ending notice by mail is preferred when all or most of the class members can be identified." *DeHoyos*, 240 F.R.D. at 296.

the Consent Decree will provide, how to file an objection, and how to obtain more information.[4]

The Notice is therefore reasonable and satisfies Rule 23(e)'s requirements.

    **IV.    The Attorneys' Fees and Expenses Provided for by the Consent Decree Are Reasonable**

        In an agreement dated June 15, 2012, and as part of the Consent Decree, Defendants have agreed to pay $520,000 in attorneys' fees to Plaintiffs' attorneys, Timothy B. Garrigan, David J. Guillory, and Stephanie K. Stephens.  *See* Exhibit 3; *see also* Consent Decree at § V.B.  The Court may award reasonable attorneys' fees and nontaxable costs that are authorized by the parties' agreement in a class action settlement. *See* Fed. R. Civ. P. 23(h).  The negotiated fee award of $520,000.00 is entirely reasonable, and fully consistent with the law of this District, given the complexity of this case, the substantial work and time invested to litigate and ultimately negotiate a settlement, and the significant benefits and relief provided to the Certified Class as a result. The parties thus submit that the award of fees and costs provided by the Consent Decree should be preliminarily approved by the Court.

<b>CONCLUSION</b>

        For the foregoing reasons, the Court should preliminarily approve the Consent Decree, approve the form and method of notice to the Certified Class, and schedule appropriate dates for a fairness hearing and other proceedings necessary to give final approval to the Consent Decree. Following the fairness hearing, the Court should enter final judgment.

---

[4] The Notice also informs the Class Members, pursuant to Rule 23(h)(1), of the attorneys' fees that are included as part of the settlement.

Dated:  August 3, 2012

**Counsel for Plaintiffs**
**and Plaintiffs' Class**


/s/   Timothy Borne Garrigan
Timothy Borne Garrigan
Stuckey Garrigan & Castetter
2803 North Street
PO Box 631902
Nacogdoches, TX 75963-1902
(936) 560-6020


/s/   David Joseph Guillory
David Joseph Guillory
Lone Star Legal Aid—Nacogdoches
414 E Pilar Street
Nacogdoches, TX 75961
(936) 560-1455


/s/   Elora Mukherjee
Elora Mukherjee
Sarah Hinger
American Civil Liberties Union
125 Broad Street
New York, NY 10004
(212) 549-2664


/s/   Stephanie Kay Stephens
Stephanie Kay Stephens
119 North Street, Suite E
Nacogdoches, TX 75961
(936) 559-7600

**Counsel for Defendants**

/s/   Robert Scott Davis
Robert Scott Davis
Flowers Davis LLP
1021 E.S.E. Loop 323, Suite 200
Tyler, TX 75701
(903) 534-8063


/s/   Chad Carlton Rook
Chad Carlton Rook
Flowers Davis LLP
1021 E.S.E. Loop 323, Suite 200
Tyler, TX 75701
(903) 534-8063


*Attorneys for Defendant Shelby County*

/s/   Galen Robert Alderman
Galen Robert Alderman, Jr.
Zeleskey Law Firm, PLLC
1616 S. Chestnut
Lufkin, TX 75902
(936) 633-4209


/s/   Brent Lee Watkins
Brent Lee Watkins
Zeleskey Law Firm, PLLC
1616 S. Chestnut
Lufkin, Texas 75902
(936) 633-4209


*Attorneys for Defendant City of Tenaha*

/s/   Walter Thomas Henson
Walter Thomas Henson
Ramey & Flock
100 E Ferguson, Suite 500
Tyler, TX 75702-0629
(903) 597-3301


*Attorneys for Defendant Lynda K. Russell*
*and the Shelby County District Attorney's*
*Office*

17