IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS,

MARSHALL DIVISION

| | |
|---|---|
| JAMES MORROW, § <br> STEPHEN STUART WATSON, § <br> AMANEE BUSBY, YUSELFF DISMUKES, § <br> LINDA DORMAN, § <br> MARVIN PEARSON, § <br> JENNIFER BOATWRIGHT, and § <br> RONALD HENDERSON, and § <br> A Proposed Class of Other § <br> Similarly Situated Persons, § <br>     PLAINTIFFS § <br> § <br> V. § <br> § <br> CITY OF TENAHA DEPUTY CITY § <br> MARSHALL, BARRY WASHINGTON, § <br> In his Individual and Official Capacity; CITY § <br> OF TENAHA MAYOR GEORGE BOWERS, § <br> In his Individual and Official Capacity; § <br> SHELBY COUNTY DISTRICT ATTORNEY § <br> LINDA KAY RUSSELL, In her Individual § <br> and Official Capacity; SHELBY COUNTY § <br> DISTRICT ATTORNEY INVESTIGATOR § <br> DANNY GREEN, In his Individual Capacity § <br> only; and SHELBY COUNTY PRECINCT 4 § <br> CONSTABLE RANDY WHATLEY, In his § <br> Individual and Official Capacity, § <br>     DEFENDANTS § | Civil Action No. 2:08-cv-288 <br><br> JUDGE: RODNEY GILSTRAP |

**PLAINTIFFS' REPLY TO DEFENDANT CITY OF TENAHA'S (DKT 325) AND SHELBY COUNTY'S (DKT 324) RESPONSES IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND THE DECREE**

TO THE HONORABLE COURT:

In this Reply Plaintiffs respond to the arguments raised in the Defendants' Responses.

1. **Waiver:** The Responses both inaccurately contend that Plaintiffs did not comment on the draft QMRs circulated by the Monitor prior to submission to the Court. Plaintiffs' counsel conferred with the Monitor about the draft Reports and addressed comments to the Monitor regarding every QMR, as provided in the Decree.[1] Further, the Monitor advised the undersigned that Defense counsel had never made any contact regarding any of the QMRs.[2] While perhaps Plaintiffs could have formally commented or objected to the Court about the Monitor's QMRs, Plaintiffs believed the QMRs advised the Court of the problems with Defendants' efforts under the Decree.[3] As a result Plaintiffs' Motion is based entirely on the QMRs.

2. **Defendants' strategic avoidance of activities subject to monitoring:** Defendants' Responses do not contest that both agencies adopted policies that during the course of the Decree they would not detain anyone incident to a traffic stop beyond the time necessary to address the underlying traffic violation. The policies thus avoided any detentions, searches, seizures, arrests, and/or forfeitures[4] – the routine, potentially legitimate, police activities that Defendants abused in their racially discriminatory

---

[1] "The parties shall have thirty (30) days to review and confer regarding any aspect of the draft Report and Recommendation, and to provide comments to the Monitor." Decree p. 23.
[2] Apparently until the Motion (Dkt 315) was filed.
[3] Defendants are already contending that Plaintiffs' counsel spent too much time and effort assisting the Monitor. Now they suggest it should have been more time and effort.
[4] This policy of avoiding most legitimate police work has drawn critical comment in every QMR in the sections headed "Provisions for detentions, canine sniffs, searches, seizures, arrests and/or forfeitures," referring to Decree Sections III(C), (D), (E), (F), (G) and (H).

interdiction program that were to be monitored under the Decree. As a result Defendants have failed to demonstrate, and no one can be assured, that the Defendants' officers have the will or ability to conduct these activities legitimately and for valid purposes. The Responses make no explanation how Defendants' avoidance approach to "complying" with the Decree is consistent with the Decree's stated purpose to *end* the Defendants' racial profiling by prohibiting the incentives and practices that resulted in racial profiling "in a manner [i.e., via mechanical audio and video recordings] that can be verified by the parties, the Monitor, and the Court."[5]. Defendants avoided this stated purpose, and as a result we can only be sure of a four-year hiatus in the Defendants' abuses during the Decree, not that racial profiling has ended.

3. It is telling that both Defendants' responses equate detentions, searches, seizures, arrests and forfeitures only with "interdiction work", completely ignoring that these are routine practices any traffic officer should be able to do for legitimate purposes when appropriate. This is what the Decree anticipated. It certainly did not suggest that Defendants should continue their Interdiction Program under the Decree or after its conclusion.[6]

4. The Monitor considered the Defendants' strategy of avoiding performing most of the police activities to be monitored under the Decree to be important enough to mention it in every QMR filed to date. However, he did not include formal recommendations to correct the problem. This may be because Defendants at least seemed to ignore most of his formal recommendations. It may also be because the

---

[5] Decree Section II.C.
[6] That Defendants intend to reanimate their Interdiction Program is confirmed by the Minutes of the City of Tenaha Meeting of April 20, 2015, reflecting the City Attorney Mentioning that the City needs to establish a Drug Interdiction Program. See Dkt 325-1.

Monitor knew he had advised the Court of the matter in the QMRs and didn't consider Defendants' failure to achieve larger objectives of the Decree to be the sort of specific violation subject to his recommendation. Nonetheless, as a legal matter, achievement of a decree's objectives is a critical issue.[7]

    4. **The Inter-local agreement:** Shelby County's Response does not contest that it represented to Plaintiffs and the Court, in a material provision of the Decree, that it had already entered into an Inter-local agreement with its precinct 1, 2, 3, and 5 constables. The County has never explained this misrepresentation to the Court or Plaintiffs, nor negotiated for a resolution. The County subsequently advising the Court and Plaintiffs of this lack of the Inter-local agreement does not resolve the problem or somehow change the terms of the Decree.[8] The County's Reponse fails to provide any explanation for their willful disregard of the Monitor's persistent formal recommendations to deal with the matter through formal policy.

    6. **Defendants would not produce documentation of formal adoption of Decree-required policies:** Both Responses fail to contest or otherwise address the Defendants' persistent failures to respond to the Monitor's many mentions and formal recommendations of their *failure to provide documentation that Decree-required Impartial Policing and Internal Review policies had been formally adopted.*[9] They similarly fail to give any explanation for the several references in the QMRs indicating that their attorneys were also failing to provide the documentation. The Responses both

---

[7] Horne v. Flores, 557 U.S. 433, at 450 (2009) ("…a critical question in [modifying a decree]… is whether the objective of [the decree] … has been achieved.")
[8] Attempts to modify a Decree are generally addressed by Rule 60(b)(5), which the County has never addressed.
[9] The requirements are at Sections III.A and .K of the Decree. As mentioned in the Motion, the Monitor persistently mentioned, and made formal recommendations regarding, the Defendants' failures to provide the documentation in QMRs.

present arguments and affidavits that the policies had been adopted.[10] However it appears that only the City provided documentation of formal adoption, and then not until the day it filed its Response.[11] It appears unlikely that the City would have ever provided the documentation if Plaintiffs' Motion hadn't been filed.

7. **Officer training:** The City's Response concedes that the Decree-required annual training was not provided in 2014 or 2015, and asserts no reason for disregarding the Monitor's recommendations that the training schedule be dealt with by a formal policy, except that it had not been required by the Decree. The County's Response asserts that the Monitor excused it from the training requirement for 2014, but makes no excuse for the failure to provide training in 2015. The County's explanation is supported by an Affidavit from the Monitor. However the pertinent part of the Affidavit, and the excuse itself, are at odds with the at least the 8th QMR , covering the 3rd quarter of 2015, ("Attorney for Shelby County is going to furnish a report of training for 2014")[12]

8. **Reports to Dispatch:** The County's Response does not dispute the problems with the failures to comply with the Decree requirement to report traffic stops to dispatch, or make any explanations for the unanswered recommendations and criticisms in the

---

[10] Sections III.A and .K of the Decree require the "Defendants" to adopt these policies. The Defendants are realigned to include Shelby County, the City of Tenaha, and the Shelby County District Attorney's Office, through their chief officials in their official capacities. Decree Sections I.B.3. Contrary to its arguments it is the County, not the Constable, who was responsible to formally adopt policies. There is no showing that that the County ever adopted the required policies.

[11] The City's Response indicates that documentation was not provided to the Monitor until 9/5/17, the day the Response was filed. Dkt 325 at p. 8.

[12] The 6th QMR, covering the first quarter of 2015, is similar. The 7th QMR, covering the second quarter of 2015 ("Attorneys for respective agencies have failed to provide training as per the Decree") also contradicts the County's explanation and the Affidavit of Evans.

QMRs. Oddly, the County's Response blames the (County's) Sheriff's Department. There is no description of any attempt by the Defendant County to try to resolve the problems with the Sheriff's Department. The City's Response notes that it's officers are not specifically criticized for the problems with dispatch, describes no efforts to correct the problems, and makes not explanation for its failure to respond to the criticisms and recommendations in the QMRs.

**9. Mechanical recordings of traffic stops:** Both responses prefer to ignore the existence of problems with the audio and video recording equipment, but utterly fail to explain or address their disregard of the persistent problems mentioned and recommendations to consider improvement in the QMRs.

**10. Statements in the Monitor's Affidavits:** Plaintiffs are concerned about the Monitors affidavit testimony, its discrepancies with the Monitor's QMRs, and with Plaintiffs' counsels recollections. However, the underlying problems also suggest additional reasons that Plaintiffs have not gotten the benefit of their bargain in the Decree.

**CONCLUSION**

For the reasons stated above and in the Motion, and considering the many matters not addressed in the Defendants' Responses, Plaintiffs renew their request that the Court extend the duration of the Decree. Plaintiff's also refer the Court to *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, (5th Cir. 2005) which in par concerns the courts' ability to enter injunctive relief to enforce a prior judgment for which there had been only half-hearted effort to comply.

Respectfully submitted,

/s/ Timothy B. Garrigan
Timothy B. Garrigan
Bar Card No. 07703600
Stuckey & Garrigan Law Offices, PLLC
2803 North Street, Suite C
Nacogdoches, TX 75965
Tel: 936-560-6020
Fax: 936-560-9578
Email: tim@sgclaw.org
Attorney-for Plaintiffs, James Morrow, *et al.*

**CERTIFICATE OF SERVICE**

By my signature below, I certify that I relied on the ECF to serve a copy of the foregoing document on counsel of record on September 12, 2017.

/s/ Timothy B. Garrigan
Timothy B. Garrigan