IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JAMES MORROW, STEPHEN STUART WATSON, AMANEE BUSBY, YUSELFF DISMUKES, LINDA DORMAN, MARVIN PEARSON, JENNIFER BOATWRIGHT, RONALD HENDERSON, JAVIER FLORES, WILLIAM FLORES, | § § § § § § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CIVIL ACTION NO.  2:08-CV-00288-JRG |
| CITY OF TENAHA DEPUTY CITY MARSHAL BARRY WASHINGTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CITY OF TENAHA MAYOR, SHELBY COUNTY DISTRICT ATTORNEYS OFFICE, SHELBY COUNTY PRECINCT 4 CONSTABLE RANDY WHATLEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; SHELBY COUNTY DISTRICT ATTORNEY INVESTIGATOR DANNY GREEN, IN HIS INDIVIDUAL CAPACITY ONLY; AND SHELBY COUNTY, | § § § § § § § § § § § § § § § § § § | |
| *Defendants*. | § § | |

## ORDER AND MEMORANDUM OPINION

Before the Court are Plaintiffs' Contested Motion for Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from September 1, 2016 Through April 30, 2019 (Dkt. No. 364) and Plaintiffs' Contested Motion for Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from May 1, 2019 Through March 31, 2020 (Dkt. No. 382) (collectively, the "Motions").  Having considered the Motions, the related briefing, and the oral

argument presented at the Status Conference held on July 21, 2020, the Court is of the opinion that

the Motions should be and hereby are **GRANTED-AS-MODFIED**.

## I.     BACKGROUND

On July 24, 2008, Plaintiff James Morrow and a proposed class of others similarly situated

("Plaintiffs") filed suit against Defendants City of Tenaha Deputy City Marshal Barry Washington,

City of Tenaha Mayor, Shelby County District Attorneys Office, Shelby County Precinct 4

Constable Randy Whatley, Shelby County District Attorney Investigator Danny Green, and Shelby

County ("Defendants") under 42 U.S.C. § 1983, alleging that Defendants' actions violated the

Fourth Amendment's prohibition against unreasonable searches and seizures and the Fourteenth

Amendment's Equal Protection Clause. (Dkt. No. 1; Dkt. No. 111 at 1–2.)

On August 29, 2011, this Court certified the Plaintiff class for injunctive and declaratory

relief. (Dkt. No. 233 at 2.) Pursuant to Federal Rule of Civil Procedure 23(b)(2), the Court certified

the following class:

> (1) People who are, or appear to be, members of racial or ethnic minority groups
> and those in their company, and
> (2) Were, or will be, traveling in, through, or near Tenaha, Texas at any time after
> November 1, 2006, and
> (3) Were stopped, or will be subject to being stopped, by one or more Defendant
> for an alleged traffic violation.

(*Id.* at 57.) The Parties ultimately negotiated a settlement agreement consisting primarily of a

consent decree, which requires Defendants to follow detailed and monitored procedures for a

period of years to ensure that Defendants' future policing practices did not result in the same or

similar illegal traffic stops, detentions, searches, and seizures alleged in the lawsuit ("the Decree")

(Dkt. No. 278–1, Ex. A). The Decree requires a court-appointed Monitor to oversee compliance

efforts and produce quarterly reports to be reviewed by the parties prior to submission. (*Id.* at 21.)

According to the Decree, the Monitor must provide a draft of each quarterly report to the Parties,

prior to submission to the Court. (*Id*. at 23.) The Parties have thirty days to review and confer regarding "any aspect of the draft Report and Recommendation, and to provide comments regarding same to the Monitor." (*Id*.) In addition, under the Decree, Defendants are responsible for the reasonable costs and fees of the Monitor. (*Id*. at 24.) The Parties agreed "to exercise their best efforts and to take all reasonable steps necessary to effectuate the Consent Decree." (*Id*.) On December 6, 2018, the Court granted the Parties' joint nomination of John Malcolm Bales as the Monitor. (Dkt. No. 353.)

Based on a separate agreement dated June 15, 2012 ("the June 15 agreement"), Defendants agreed to pay, and Plaintiffs' attorneys agreed to accept, $520,000 as attorneys' fees. (Dkt. No. 261 at 8.) The Parties represented that this attorneys' fees payment covered work performed by the Plaintiffs' attorneys through June 15, 2012. (*Id*. at 8 ("This payment covers work performed by [Plaintiffs'] attorneys as of June 15, 2012, as well as their best efforts to negotiate a settlement agreement and obtain court approval of that agreement pursuant to Rule 23(e).")); (Dkt. No. 261–4, Ex. 3.) Defendants paid for Plaintiffs' attorneys' fees and costs within thirty days of the entry of the Consent Decree. (Dkt. No. 278–1, Ex. A at 24.) In compliance with the Decree, Plaintiffs' counsel executed "a release of all claims for attorneys' fees and expenses relating to this class action suit through the date of said release." (*Id*. (emphasis added).) Although the Decree does not address any attorneys' fees incurred by Plaintiffs' counsel after the date of such release in 2013, it does state, "[t]he Defendants shall pay counsel fees and costs to the Plaintiffs' attorneys as previously agreed to by the parties." (*Id*.) Plaintiffs represent, and Defendants do not dispute, that the "previous agreement" referred to in the Decree is the June 15 agreement. (Dkt. No. 307 at 3 n.5 ("There is no dispute that the previous agreement referred to in the Decree is part of the Mediator's proposal."); Dkt. No. 306 at 2.) The June 15 agreement states that "[o]ther efforts by

Plaintiffs' Counsel are not covered by the provision [in the Decree] and remain billable and/or subject to determination by the Court." (Dkt. No. 261–4, Ex. 3 at 2.)

The Court has previously granted Plaintiffs' Motion for an Award of Interim Attorneys' Fees and Expenses for the Period of September 10, 2013 to August 31, 2016.  (Dkt. No. 328.) Plaintiffs now seek attorney fees for the period from September 2016 through April 2019 (Dkt. No. 364); as well as May 1, 2019 through March 31, 2020.  (Dkt. No. 382.)  Since the arguments in these Motions are substantially similar, the Court will address the Motions together herein.[1]

## II.   AUTHORITIES

### A.  Legal Basis for Award of Fees and Expenses

Under 42 U.S.C. § 1988(b), in an action to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988(b) limits fee awards to the "prevailing party," which is generally considered as the party who "has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit" and one who "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 767 (5th Cir. 1996) (citations omitted). "[F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 94–1011, 94th Cong. 2d Sess. 5 (1976), reprinted in (1976) U.S. Code Cong. & Admin. News, pp. 5908, 5912. *See Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977).

---

[1] Appropriate citations to the docket indicate when and where each party argument addressed by the Court is raised.

Several courts have held that, in the context of 42 U.S.C. § 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1987) (collecting cases); *see also Alberti v. Klevenhagen*, 896 F.2d 927, (5th Cir. 1990) (reviewing an interim attorneys' fees order in the context of ongoing monitoring of a consent decree), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990).

### B.  Scope of a Consent Decree

Where a dispute arises regarding the scope of the consent decree, "[g]eneral principles of contract interpretation govern the interpretation of a consent decree." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349–50 (5th Cir. 1998); *see also Frew v. Janek*, 780 F.3d 320, 327–28 (5th Cir. 2015). Thus, consent decrees are to be construed only by reference to the "four corners" of the order itself. *Chromalloy*, 158 F.3d at 350. Furthermore, the court "look[s] to state law to provide the rules of contract interpretation." *Frew*, 780 F.3d at 327 n.28 (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc*., 88 F.3d 347, 352 (5th Cir. 1996)). Courts have applied Texas law in cases involving consent decrees concluded between Texas parties. *See, e.g., Frew*, 780 F.3d at 327–28; *El Paso v. El Paso Entm't, Inc.*, 464 App'x 366, 372 (5th Cir. 2012) (per curiam) (unpublished).

### C.  Determination of Fees Under 42 U.S.C. § 1988

Under § 1988, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing S. Rep. No. 94–1011, p. 4 (1976)). "In computing the fee, counsel for prevailing parties should be paid, as traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Id.*, 461 U.S. at 430 n.4 (citations omitted).

The determination of a fees award is a two-step process. *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011). First, the court calculates the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id*. In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id*. at 379–80. Once the lodestar amount is calculated, the court may enhance or decrease it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id*. at 380. In *Johnson*, the Fifth Circuit laid out twelve factors to be considered in deciding whether the lodestar ought to be adjusted. 488 F.2d at 717–19. Those factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (1) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. "The court must provide a 'reasonably specific explanation for all aspects of a fee determination.'" *Id*. (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)).

**III.   ANALYSIS**

For the period running September 1, 2016 through April 30, 2019, Plaintiffs request interim attorneys' fees in the amount of $210,430 for hours billed, as well as $1,061.63 for reasonable expenses.  (Dkt. No. 364.)  For the period running May 1, 2019 through March 31, 2020, Plaintiffs request interim attorneys' fees in the amount of $149,040 for hours billed, and no expenses.  (Dkt. No. 382.)  Plaintiffs represent that under Fifth Circuit law, because they obtained a Consent Decree, they are the prevailing party for the purposes of awarding fees.  (Dkt. No. 364 at 4; Dkt. No. 382 at 2.)

6

Defendants argue the Court should substantially reduce the fees sought by Plaintiffs' counsel because (1) the hours for which Plaintiffs seek to recover fees were not reasonably expended; (2) the results obtained by Plaintiffs were not wholly prevailing; (3) the nature of the lawsuit is no longer novel or complex; (4) the City cannot pay the amount requested by Plaintiffs; and (5) the extension of the Decree was due to Plaintiffs' counsel's lack of diligence, for which they should not be compensated.  (Dkt. Nos. 367, 386.)

The Court has already determined that Plaintiffs may be awarded reasonable fees for post-decree work on this case.  (Dkt. No. 328 at 10–11.)  In determining what amount of fees should be awarded to Plaintiffs under 42 U.S.C. § 1988, the Court will now calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez*, 621 F.3d at 379. The Court will then determine whether the lodestar should be adjusted upward or downward by considering the *Johnson* factors. 488 F.2d at 717–19.

## A.  Reasonable Hourly Rates

Attorneys' fees awards in civil rights cases facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "Fee awards must, however, be reasonable." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Reasonable hourly rates" are to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This burden lies on the applicant. *Id.* at 896. Such requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11.

7

Mr. Timothy Garrigan bills his time at $500 an hour.  (Dkt. No. 364-1 at ¶ 14; Dkt. No. 382-1 at ¶ 18.)  Mr. David Craig billed his time at $350 an hour for the interim period September 1, 2016 through April 30, 2016 (Dkt. No. 364-1 at ¶ 14), and at the rate of $400 an hour for the interim period May 1, 2019 through March 31, 2020.  (Dkt. No. 382-1 at ¶ 17.)  In support of Mr. Garrigan's requested rate, Plaintiffs have offered the declaration of Mr. Otis Carroll, a well respected trial lawyer who practices law in the Eastern District of Texas. (Dkt. No. 364-3; Dkt. No. 382-3.) Mr. Carroll states that Mr. Garrigan's requested rate is reasonable. (Dkt. No. 364-3 at ¶ 3; Dkt. No. 382-3 at ¶ 3.) Mr. Carroll, whose practice includes representing parties in complex federal litigation, represents that the range of customary reasonable fees for complex civil litigation in the Eastern District of Texas exceeds $700.00 an hour. (Dkt. No. 364-3 at ¶ 1; Dkt. No. 382-3 at ¶ 1.) In fact, over eight-and-a-half years ago, this Court approved, and the Fifth Circuit affirmed, Mr. Garrigan's then-current requested rate of $400.00 an hour for work done on complex litigation as early as 1997. *See McClain v. Lufkin Indus., Inc.*, Case No. 9:97–cv–063, 2009 WL 921436, at * (E.D. Tex. Apr. 2, 2009), *overruled on other grounds*, 649 F.3d 374, 378 (5th Cir. 2011) ("Counsel for the Plaintiffs are known to this court as trial lawyers experienced in employment law, civil rights actions, and complex litigation.").

Defendants do not generally contest that the proposed hourly rates of Mr. Garrigan and Mr. Craig are reasonable according to prevailing market rates  (*see generally* Dkt. Nos. 367, 368, 375, 377, 386, 387, 393, 394), absent their concern that "[w]hile the underlying litigation was involved and complex, the subsequent implementation of the consent decree that has now been ongoing for a little more than two (2) years, is not."  (Dkt. No. 367 at 7; *see also* Dkt. No. 368 at 2; Dkt. No. 386 at 12; Dkt. No. 387 at 2.)  This Court found a billing rate of $500.00 an hour for Mr. Garrigan to be reasonable when it previously awarded fees for post-Decree monitoring efforts.  (Dkt.

8

No. 328 at 18.)  As filed, this was a complex class action civil rights case that involved Fourth and Fourteenth Amendment equal protection issues, a significant plaintiff class, and widespread national coverage. (Dkt. No. 111 at 14–15.)  However, in the most recent years, the complexity of the case has diminished.  Indeed, Mr. Garrigan's bills are currently for much less complex tasks that must be performed under the Consent Decree.  Such tasks do not require the skill—or billing rates—of a highly accomplished complex class action litigator.  Therefore, in these narrowed circumstances in which Mr. Garrigan is performing legal services after redundant reading and review of reports and documents, the Court finds that a rate of $450.00 an hour is reasonable, and awards Mr. Garrigan the same for his work.

Similarly, having considered the same, the Court finds a rate of $350.00 an hour reasonable for Mr. Craig pre-May 1, 2019.  However, the Court finds no reason to award an increase of $50.00 an hour for post-May 1, 2019 time billed.  While Mr. Craig has garnered more experience and therefore likely will command a higher rate in the market as time progresses, there is no indication his duties in this case have appreciably changed.  The Court therefore awards Mr. Craig a rate of $350 an hour to be reasonable for the interim period September 1, 2016 through March 31, 2020.

### B.  Hours Reasonably Expended

Plaintiffs have submitted schedules detailing the hours claimed to have been expended in connection with the monitoring-related efforts of Mr. Garrigan and Mr. Craig.  (Dkt. Nos. 364-1 at Attachment A;  364-2 at Attachment A; 382-1 at Attachment A; 382-2 at Attachment A.)  The Court, having extensively reviewed the time entries, now addresses the Defendants' objections. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) ("[T]he court should exclude all time that is excessive, duplicative, or inadequately documented.").

Defendants' first objection is that some of the entries for the interim period September 1, 2013 through April 30, 2019 are duplicative.  (Dkt. No. 367 at 8.)  Defendants argue that "at the first hearing the Plaintiffs failed to secure the presence of Monitor Evans," and therefore "the Court continued the hearing, and another hearing was held."  (Dkt. No. 367 at 8.)  Defendants object that the billable hours are therefore duplicative, as "Plaintiffs' counsel attributes over 15 hours for the preparation and attendance of the first hearing, then another 14 to 're-prepare' and attend the second hearing."  (*Id.*)  Accordingly, Defendants request a discount of fifty percent, for a total of 14.5 billable hours.  (*Id.*)  Plaintiffs argue that there should be no discount on billable hours in regards to rescheduling the hearing, as the Court actually "reset the hearing and ordered the Defendants to produce pertinent documents," and therefore that the rescheduling was not Plaintiffs' fault.  (Dkt. No. 372 at 4.)  The original hearing was rescheduled both to allow for the presence of Monitor Bales and to allow Defendants time to produce pertinent documents.  (Dkt. No. 335 at 2; Dkt. No. 334 at 4:7–21.)  The Court agrees that Defendants should not required to pay for Plaintiffs' redundant preparation for the second-scheduled hearing.  Accordingly, 14.5 hours of Mr. Garrigan's time and $85.02 of expenses were not reasonably expended.

Defendants' second objection is that attorneys' fees for the use of a drug dog cannot be recovered because Plaintiff did not prevail on that issue, since there was never a ruling by the Court.  (Dkt. No. 367 at 8–9.)  However, "[a] party that successfully obtains a settlement agreement that is made enforceable through a consent decree is a prevailing party."  *Frew v. Traylor*, 688 Fed.Appx. 249, 254 (5th Cir. 2017) (citing cases).  The Court is not aware of any authority according a party "prevailing" status piecemeal, such that different parties may be awarded fees for different portions of the case.  As the Plaintiffs obtained a Consent Decree, the Court finds them to be the prevailing party, and therefore "[f]ees may also be recoverable for successful work

10

done after entry of the consent decree that is done to enforce the decree," (*Id.*) without diving into fragmented awards that differ issue-by-issue.

Defendants' third objection is that the hours for which Plaintiffs' attorneys request fees are not reasonable because Plaintiffs only were required to do the work due to their lack of diligence during the initial monitoring period.  (Dkt. No. 367 at 5; Dkt. No. 386 at 6.)  Specifically, Defendants allege that Plaintiffs' counsel waited until the eve of expiration of the Decree to address what it viewed as deficiencies with compliance.  (Dkt. No. 367 at 6; Dkt. No. 386 at 10.)  Further, Defendants argue that Plaintiffs' review of and comments on the Monitor's Quarterly Monitoring Reports ("QMRs") became increasingly excessive as time passed, which would not have been necessary had Plaintiffs addressed the activities of Defendants when they initially arose and were pointed out in the QMRs.  (Dkt. No. 386 at 6–10.)  Plaintiffs argue that they were merely responding to the City's non-compliance with the Decree (Dkt. No. 372 at 1), and Plaintiffs' counsel's time spent reviewing and addressing the QMRs was reasonable, and that Defendants do not point to any alleged deficiencies therein.  (Dkt. No. 388 at 1.)

The Court does not find it unreasonable that Mr. Garrigan and Mr. Craig sought to secure the Defendants' compliance with the Decree, and as part of those efforts spent time reviewing and preparing comments on every QMR.  Indeed, the Decree itself allows the Parties to provide comments and suggestions to the Monitor after receiving drafts of the Reports and Recommendations. (Dkt. No. 278–1, Ex. A at 23.)  Nonetheless, the efforts necessary to review and respond to the QMRs have not substantially changed over time.  Previously, the Court awarded fees for approximately ten hours of attorney time spent reviewing the Monitor's quarterly Report and Recommendation.  (Dkt. No. 328 at 19.)  In so doing, the Court noted that "it was reasonable for Mr. Garrigan to have spent a greater amount of time commenting on the first draft Report and

Recommendation." (*Id.* at 20.)  Accordingly, the Court expected Plaintiffs' counsel to achieve efficiencies in these quarterly tasks as they reviewed and responded to more of them; however, the opposite has occurred.  Plaintiffs' counsel has now presented the Court with varying and increasing time spent reviewing and responding to the QMRs.  (*See*, *e.g.*, Dkt. No. 386 at 6–9 (totaling various amounts billed for Plaintiffs' counsel review of QMRs during May 1, 2019 through March 31, 2020; *see also*, *e.g.*, Dkt. No. 382-1 at Attachment A (billing over 38 hours for review and response to the Monitor's second QMR of 2019).)

The Court finds that not all of Plaintiffs' counsels' time spent reviewing and responding to the Monitor's QMRs is reasonable.  Indeed, Plaintiffs' counsel spent over four times as much time on the Second QMR of 2019 as they did on a QMR in 2014, despite an expectation of increased efficiency.  The Court therefore finds a reduction of 50% in time billed for work on QMRs to be reasonable.[2]

Defendants' fourth objection—raised by Shelby County—is that Plaintiffs' bills were not timely submitted.  (Dkt. No. 368 at 2.)  Plaintiffs respond that Defendants have failed to point out any specific deficiency, and that "the County never requested billing at any particular time or schedule," and "[t]he County certainly knew when the first billing was required under §V.B., that Plaintiffs' fees had only been paid through August, 2016, and had no reason to expect not to be held responsible for Plaintiffs' counsels' efforts since that time."  (Dkt. No. 373 at 2.)  Section V.5 of the Amended Decree provides that "Plaintiffs shall bill Defendants directly for their accrued

---

[2]Mr. Garrigan billed 61 hours and 20 minutes for work related to his review and response to QMRs for the period May 1, 2019 through March 31, 2020.  (Dkt. No. 382-1 at Attachment A.)  Mr. Craig billed six and a half hours for work related to his work on the QMRs from May 1, 2019 through March 31, 2020.  (Dkt. No. 382-2 at Attachment A.)  Mr. Garrigan billed 69 hours and 35 minutes for work related to his review and response to QMRs for the period September 1, 2016 through April 30, 2019.  (Dkt. No. 364-1 at Attachment A.)  Mr. Craig billed 70 minutes for work related to his work on the QMRs from September 1, 2016 through April 30, 2019.  (Dkt. No. 364-2 at Attachment A.)  Therefore, applying a reduction of 50%, Plaintiffs' bills are to be reduced by 65 hours and 28 minutes of Mr. Garrigan's time and 3 hours and 50 minutes of Mr. Craig's time.

fees and expenses quarterly during the 30-day comment period following the filing of each quarterly Monitor's Report."  (Dkt. No. 363-1 at §V.5.)  The Court agrees with Plaintiffs that Shelby County had no reason to expect not to pay for continued efforts by Plaintiffs' counsel to monitor the enforcement of the Consent Decree.  In light of this expectation, Shelby County could have easily requested the assistance of the Court in securing timely received bills by Plaintiff, but never did.  The Court therefore concludes that Shelby County is unable to persuasively, at the final hour, protest the timeliness of the bills.

Defendants' final objection is that such an excessive award cannot be paid by the City of Tenaha.  (Dkt. No. 367 at 9; Dkt. No. 386 at 13.)  Further, Defendant Shelby County requests that it be precluded from paying any "fees unique to the City of Tenaha," for example, "billing related to issues involving use of a drug dog."  (Dkt. No. 368 at 4; *see also* Dkt. No. 387 at 2.)  The Court is not persuaded by either of these arguments, as all Defendants joined the Consent Decree and in doing so agreed to pay fees and costs.  (Dkt. No. 278-1 at V.B.)

### C.  The *Johnson* Factors

Once the lodestar is determined, the Court may adjust the lodestar upward or downward if the Johnson factors, not included in the reasonable fee analysis, warrant the adjustment. *Snipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). As lodestar enhancements are generally reserved for "exceptional" circumstances, the Court declines to adjust the lodestar upward or downward. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–55 (2010).

## D.  Reasonable Expenses

Plaintiffs also seek reimbursement in the amount of $1,061.63 for reasonable expenses for the interim period of September 1, 2016 through April 30, 2019 associated with copies ($58.20), postage ($54.50), mileage ($502.13) and two hearing transcripts ($446.90).  (Dkt. No. 364-1 at Attachment B.)  "The Defendants shall be responsible for reasonable costs and fees of the Monitor." (Dkt. No. 278–1, Ex. A at 24.)  The Court finds that Defendants are responsible for these reasonable expenses associated with the Plaintiffs' continuous monitoring of compliance with the Consent Decree.

## E.  Determination of Fees and Costs

The calculation of fess and costs awarded is as follows:

| Interim Period | Fee Biller or Expense | Time | Rate | Total |
|---|---|---|---|---|
| September 1, 2016 through April 1, 2019 | Mr. Timothy Garrigan | 351 hours, 20 minutes[3] | $450/hour | $158,099.85 |
| | Mr. David Craig | 34.8 hours | $350/hour | $12,180.00 |
| | Expenses[4] | | | $976.61 |
| May 1, 2019 through March 31, 2020 | Mr. Timothy Garrigan | 239 hours, 17 minutes[5] | $450/hour | $107,677.50 |
| | Mr. David Craig | 30 hours | $350/hour | $10,500.00 |
| | | | GRAND TOTAL | $289,433.96 |

## IV.  Conclusion

Accordingly, the Court **GRANTS-AS-MODIFIED** Plaintiffs' Contested Motion for Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from September 1,  2016 Through April 30, 2019 (Dkt. No. 364) and Plaintiffs' Contested Motion for

---

[3] Mr. Garrigan originally submitted bills for 396.5 hours of time.  This total number has been calculated by applying the 50% reduction to his time spent on QMRs and the reduction of 14.5 hours for duplicative hearing preparation discussed *supra*.

[4] Expenses have been adjusted as discussed *supra*.

[5] Mr. Garrigan originally submitted bills for 274 hours and 5 minutes of time.  This total number has been calculated by applying the 50% reduction to his time spent on QMRs discussed *supra*.

Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from May 1, 2019

Through March 31, 2020 (Dkt. No. 382).  The Plaintiffs are hereby awarded a sum of $289,433.96

in fees and costs, to be paid by Defendants, *instanter*.

    **So ORDERED and SIGNED this 15th day of September, 2020.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE