IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JAMES MORROW, et al., | § | |
| and A Certified Class of Other | § | |
| Similarly Situated Persons, | § | |
|     PLAINTIFFS | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:08-cv-288 |
| | § | |
| CITY OF TENAHA DEPUTY CITY | § | JUDGE: RODNEY GILSTRAP |
| MARSHALL, BARRY WASHINGTON, | § | |
| et al. | § | |
|     DEFENDANTS | § | |

**PLAINTIFFS' CONTESTED MOTION FOR AWARD OF INTERIM
ATTORNEYS' FEES INCURRED DURING THE FEE PERIOD FROM
APRIL 1 THROUGH DECEMBER 31, 2020**

### INTRODUCTION:

This is a civil rights case in which the certified plaintiff class obtained a Decree based on allegations of a years-long conspiracy by Defendant City of Tenaha and Shelby County law enforcement agencies and officials[1] to abuse their authority to conduct traffic stops based on racial/ethnic profiling to unreasonably stop and search traveling class members and seize their money and property in violation rights guaranteed by the Constitution. The Decree provided for Court supervision of the Defendants' traffic enforcement and related practices from August 2013, when the Consent Decree was initially entered (Dkt 278), until September 2020, when theCourt

---

[1] There are two sets of defendants in this case, those associated with the City of Tenaha, Texas ("City Defendants") and those associated with Shelby County, Texas ("County Defendants"). This Motion seeks fees only from the City Defendants.

1

determined the Decree's objectives had been achieved. Dkt 409. Issues regarding the City Defendants' persistent refusal to pay Plaintiffs' attorney fees remain.[2]

This Motion seeks an order directing the City Defendants to pay an interim fee award of $88,553.33 for unpaid fees earned during the period from April 1 through December 31, 2020 (the period for which fees are sought in this Motion). The County Defendants' recent fee settlement included payment for some of the fees earned during the period covered by this Motion, reducing the award now sought from the City Defendants. Plaintiffs do not seek expense reimbursement for the period covered by this Motion.

### PERTINENT FEE-RELATED PROCEEDINGS, INCLUDING ONGOING FEE RESISTANCE BY THE CITY DEFENDANTS:[3]

The fee-related proceedings in this case reflect the Defendants' strategic resistance to paying fees which, in turn, unnecessarily increases the Plaintiffs' and Court's fee-related efforts.

Defendants have known that they were legally obligated to pay Plaintiffs' fees since the parties agreed to settle this case by entry of the initial Decree, an agreement that included Defendants' initial payment of Plaintiffs' fees for obtaining the Decree and provided that Plaintiffs' future fees "remain billable and/or subject to determination by the Court."[4] Nonetheless, at considerable cost, both sets of Defendants adopted a court-disfavored strategy of

---

[2] As discussed below, the County Defendants recently satisfied all of their fee obligations by payment of a negotiated settlement (See Dkt 413), leaving disputed fee issues regarding the City Defendants' obligation to pay fees accrued from April-December 2020 (addressed in this Motion), any future fees resulting from their fee disputes and their obligation to satisfy the fees awarded in Dkt 410, which remains to be addressed. See Dkt 414.

[3] As the Court is familiar with this case, background information is largely limited to that pertinent to the fees addressed.

[4] Dkt 328 at p. 3, 7-8, 11, 15-16. The availability of statutory fees for obtaining and monitoring a consent decree is a matter of well settled law. See *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 at p. 604 (2001) (Obtaining a consent decree is a basis for awarding statutory attorney fees); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1987) (Monitoring a consent decree is a compensable activity for which counsel is entitled to a reasonable fee) and: *Walker v. United States Dept. of Housing and Urban Development*, 99 F.3d 761, 767 (5th Cir. 1996)("Monitoring a consent judgment previously entered entitles a plaintiff to attorneys' fees.").

2

refusing to negotiate or consider settlement regarding any aspect of Plaintiffs' subsequently earned fees under the Decree,[5] eventually requiring Plaintiffs to file, and the Court to consider and rule on, three otherwise unnecessary contested fee motions.[6] The first such award, at Dkt 328 entered November 15, 2017, certainly put Defendants on further notice of their ongoing obligations for Plaintiffs' fees. After the initial contested award, Defendants also agreed to amend the Decree with fee-related provisions, including confirmation of their agreement that "future efforts by Plaintiffs' counsel 'remain billable and or/subject to determination by the Court'" and providing for quarterly billing by Plaintiffs to streamline the recovery of fees."[7] Nonetheless, even after the first award and the fee-related amendments to the Decree, Defendants jointly persisted in refusing to recognize their fee obligations, foreseeably requiring two more otherwise unnecessary contested fee motions for Plaintiffs to prosecute, requiring the Courts' attention and resulting in the award of additional fees.[8]

After the Court awarded fees for the third contested motion the County Defendants finally broke ranks with the City, negotiating resolution of their remaining fee obligations in this case, including their obligation for some of the fees accrued during the billing period addressed in this Motion. However, the City Defendants persist in denying any obligation for, and refusing

---

[5] Fee resistance strategies have long been disfavored. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424,437 (1983). See also, *Angela L. v. Pasadena Independent School Dist.*, 918 F.2d 1188, 1190 (5th Cir. 1990) ("When needlessly protracted, these battles squander precious judicial time and resources."); *National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1330 (D.C. Cir. 1982) ("The District Court has adequate power to prevent the opponent of a fee award from engaging in a purely vindictive contest over fees."). Normally a defendant is sufficiently discouraged from exercising strategic fee resistance because the resisting defendant will also be liable for additional fees incurred by plaintiffs to overcome that resistance. As this Court told the Defendants, "a prevailing party is entitled to recover fees for time reasonably spent on a fee application." Dkt 328 at p. 20, fn.4. See also *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (As a matter of course, plaintiffs are as entitled to their fees for litigating a fee claim as for prosecuting the merits of civil rights action.). The City Defendants have still not explained their ongoing fee resistance in light of this well-settled law or the fee rulings of the Court in this case.

[6] See contested fee motions at Dkts 302, 364 and 382, resulting in fee awards be the Court in Dkt 328 and Dkt 410.

[7] Dkt 363-1, at Sec. V.B.

[8] See additional fee awards in Dkt 410.

3

to even negotiate over, the fees at issue in this unfortunate and unnecessary fourth contested fee Motion.[9]

## THE FEE AWARD SOUGHT IN THIS MOTION:

In compliance with the Amended Decree, Plaintiffs presented Defendants with billing information for all fees accrued during the covered billing period, totaling $130,533.33.[10] However, as shown in the table below Plaintiffs adjust this amount downward to $88,553.33 due to the County Defendants' payment of $42,000 to settle their liability for some of the fees earned during the billing period covered by this Motion.[11] This much is reflected in the following table:

---

[9] Other than conclusory denials of any legal obligation for Plaintiffs' fees, the City Defendants have not identified any specific objections or authority supporting their positions, which include refusal to even negotiate over the fees sought. Lying behind the log like this prevents Plaintiffs from anticipating any argument the Defendants may make, and creates additional unnecessary effort. The City Defendants are also claiming that they have satisfied the fee award in Dkt 410, setting up another unnecessary fee-related dispute likely to require additional effort by the Plaintiffs and the Court. See Dkt 414, the "City Defendants' Disputed Notice of Satisfaction Of Attorney's Fees Order (Dkt 410)..

[10] One of Plaintiffs' quarterly billing totals provided to Defendants was calculated based decimal increments instead of 5-minute increments that have been the convention in this case, creating a minor discrepancy of $1.66 that was discovered in the preparation of the accompanying Motion. We have used the lower amount in calculating the award sought. See Exhibit 1 hereto, the Garrigan Declaration at para. 23.

[11] See also Exhibit 1 hereto, the Garrigan Declaration at para. 16-18.

| Billing Attorney | Time | Rate | Total |
|---|---|---|---|
| Mr. Timothy Garrigan | 217 hrs 52 min | $500/hour | $108,933.33 |
| Mr. David Craig | 54 hrs | 400/hour | $21,600.00 |
| **TOTAL FEES BILLED DURING THE PERIOD.** | | | $130,533.33 |
| **COUNTY SETTLEMENT AMOUNT ALLOCATED TO POST DECREE FEES (SOUGHT TO BE SUBTRACTED FROM THE AMOUNT BILLED TO GET THE AWARD SOUGHT)** | | | -$42,000.00 |
| **ADJUSTED AMOUNT OF AWARD SOUGHT[12]** | | | **$88,533.33** |

These billings are substantiated in the Declarations of Plaintiffs' counsel Garrigan and Craig and their respective billing time records, attached as Exhibits 1 and 2 to this Motion.

**Legal bases and purpose for awarding fees and expenses in civil rights cases:**

As the Court has recognized in this case, the purpose of statutory fees under 42 USC §1988 is to ensure effective access to the federal courts so persons with meritorious civil rights grievances can seek court enforcement of their federal rights.[13] The availability of statutory fees

---

[12] The fee amount sought from the City Defendants is greater than half the amount sought during the billing period largely because the County Defendants negotiated their settlement based on only the fees that had been billed through September 16, 2020, while the City is solely responsible for an additional $14,250 in fees accrued and billed after the that settlement was negotiated. Also, not surprisingly, the County negotiated for a compromise/discount that the City Defendants should not benefit from because of their own recalcitrance in refusing to negotiate. Finally, the Court correctly ruled that "all Defendants joined the Consent Decree and in doing so agreed to pay fees and costs" in refusing to allocate fees between the Defendants. Dkt 410 at p. 13, citing Dkt 278-1 at V.B. That ruling is further supported because Defendants did not contest conspiracy allegations, making them jointly and severally liable.

[13] Dkt 328, relying on *McClain v. Lufkin Indus., Inc*., 649 F.3d 374, 381 (5th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, at p. 429, 437 (1983). *Hensley* remains the seminal case on statutory fees.

is a necessary and critical component of federal law providing for court enforcement of important constitutional and other federal rights. As the Fifth Circuit has emphasized, "civil rights litigation under a fee-shifting statute is not a *pro bono* enterprise."[14] A prevailing plaintiff should ordinarily recover their reasonable attorneys' fees without the ordeal of a major second litigation, unless special circumstances would render such an award unjust.[15] A losing civil rights defendant's resistance to paying reasonable fees to a prevailing plaintiff is not a valid defense; such a strategy undermines the law designed to obtain enforcement of federally guaranteed rights. While statutory fees have made this case possible, it is Plaintiffs' position that such fee awards have not served to attract enough lawyers to undertake representation of plaintiffs in civil rights cases.[16]

**Plaintiffs Are Prevailing Parties Entitled to Reasonable Fees in this Case.**

To obtain a statutory fee award, a plaintiff must establish prevailing party status by succeeding on a significant issue which achieves some of the benefit sought in bringing suit.[17] Prevailing party status requires a court-ordered change in the legal relationship between the parties, such as a judgment on the merits or a court-ordered consent decree.[18] This Court has already determined that Plaintiffs are prevailing parties entitled to fees for obtaining and monitoring the Decree in this case.[19]

---

[14] *McClain*, 649 F.3d at p. 383.

[15] *Hensley*, 461 U.S. at p. 429 and 437. A defendant's limited financial resources, or that taxpayers might bear the burden for paying fees, do not constitute special circumstances that would affect a fee award. *Riddell v. National Democratic Party*, 624 F.2d 534, 546 (5th Cir. 1980); *Kirchberg v. Feenstra*, 708 F. 2d 991, 999, n. 7 (5th Cir. 1983), and; *Romain v. Walters*, 856 F.3d 402, 407 (5th Cir. 2017) ("our precedent requires… an extremely strong showing of special circumstances to avoid paying attorney's fees.")

[16] See Exhibit 1, Declaration of Garrigan at para. 20, and the declaration of Otis Carroll at Dkt 382-3, at para.4.

[17] *Hensley*, 461 U.S. at p. 433.

[18] *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598 at p. 604 (2001)

[19] Dkt 328 at p.7, 11- 16 and 19-20; Dkt 410 at p.3-5, 7 and 12-13, inter alia.

**Determining the Fee Amount:**

Determining the amount of a fee award is a two-step process.[20] First, the Court determines the hours reasonably expended and reasonable prevailing hourly rates for similar work, multiplying these two factors to calculate the "lodestar amount," which is strongly presumed to be a reasonable fee subject to modification only in exceptional cases.[21] The Supreme Court has recognized several important virtues associated with the lodestar amount: it is objective, predictable, readily administrable, roughly approximates fees determined in the marketplace, and meets the Supreme Court's first and second rules regarding statutory fees by yielding a fee presumptively adequate to attract competent counsel.[22] Second, the Court retains discretion to adjust the lodestar as necessary to produce a reasonable fee in light of factors not already considered in determining the lodestar, including the degree of any limited success.[23]

The Fifth Circuit has recently reiterated that prevailing civil rights plaintiffs should be awarded reasonable statutory fees absent exceptional circumstances.[24] The Fifth Circuit also clarified that fees are particularly appropriate for work anticipated or contemplated in a decree.[25] In a case like this one, where there has already been a fully litigated interim fee award for post-decree efforts – and the Defendants' arguments were all rejected (See, Dkt 328) - it is difficult to imagine a legitimate basis for the City Defendants' persistent resistance to payment of *any* fees until after the Court's attention has been required to award the fees.

---

[20] See Dkt 328 at p. 6 and 16, relying on J*imenez v. Wood County, Tex.*, 621 F.3d 372, 379 (5th Cir. 2010), on reh'g en banc, 660 F.3d 841 (5th Cir. 2011)

[21] Dkt 328 at p.20-21, relying on *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

[22] *Perdue v. Kenny A.*, 559 U.S. 542, 551-552 (2010)

[23] *Hensley*, 461 U.S. at p. 436.

[24] *Frew v. Traylor*, 688 Fed.Appx. 249, 254 (5th Cir. 2017) (citing cases).

[25] Id at 256. *Frew v. Traylo*r also indicates that counsels' efforts contemplated by a decree are compensable even if they are not particularly successful.

7

**Prevailing hourly rates requested:**

Plaintiffs request fees for attorney Garrigan be awarded at the rate of $500 per hour, the rate this Court found reasonable for Mr. Garrigan's post-decree work in in this case in ruling on Plaintiffs' first contested fee motion.[26] In requesting this rate Plaintiffs rely on the same evidence and information submitted in seeking that award and the reasons given by the Court in making that award and rejecting Defendants' arguments for lower rates.[27]

Plaintiffs request that their attorney Dave Craig be compensated at his current requested rate of $400 per hour for his efforts covered by this Motion. Previously, the Court found the requested rate of $350 an hour to be a reasonable rate for attorney Craig's work in this case through March, 2020, and awarded his fees accordingly.[28] Since that time, Mr. Craig has garnered more experience, which the Court recognized would likely result in a higher rate as time progresses. During this billing period Mr. Craig's efforts included the legal implications of statistical analyses of the Defendant's officers' practices incident to traffic stops, showing

---

[26]  See Dkt 328 at p. 17-18. The $500 per hour rate has also been applied to Mr. Garrigan's work in *Fisher v. Lufkin Ind., Inc*., C.A. 2:12-cv-423-RWS-RSP (Dkt 127) (2/20/18). Plaintiffs acknowledge this Court awarded Mr. Garrigan's fees at a reduced rate of $450 per hour for work under particular narrow circumstances involving redundant reading and review of reports and documents that the Court determined to be less complex and not requiring the skills of a highly accomplished complex class action litigator. Dkt 410 at p. 9. For similar reasons, in the same fee award, the Court also reduced Mr. Garrigan's time compensated for reviewing and responding to QMRs by about 65 hours out of over 670 hours billed. Dkt 410 at p. 11-12, fn. 2, and p. 14, fn. 2 and 4. For the billing addressed by this Motion, Plaintiffs have already reduced Mr. Garrigan's time by over 80 hours as a matter of billing judgment, to ensure that effort that was less productive than expected has already been discounted. See also Exhibit 1, the Garrigan Declaration, at para. 19-20 and 24-26.

[27]  See Plaintiffs' first contested fee Motion at Dkt 302, and supporting attachments thereto, and their reply at Dkt 307, incorporated herein by the reference. The Court expressly determined the reasonableness of Mr. Garrigan's $500 rate based on the purpose of statutory fees and prevailing market rates for similar services by lawyers of reasonably comparable skill, experience and reputation, including consideration of prior awards for Mr. Garrigan's work. Dkt 328 at p. 17. The Court also properly rejected Defendants' arguments for lower rates based on their general characterization of some work as "routine," without proper consideration of context, i.e., . Dkt 328 at p. 18 -20. Further, it is notable that the $500 rate was not based on an upward enhancement of the lodestar due to the particular or exceptional complexity of the work addressed at that time, one of the Johnon factors. Dkt 328 at p. 17-18 and 21. The $500 per hour rate is well within the range of prevailing rates for complex federal litigation in the Eastern District, and is not at the top of that range nor among the rates commanded by lions or the bar.

[28]  Dkt 410 at p. 9. At that time the Court found no reason to increase Mr. Craig's rate to $400 per hour for his work from May 2019 through March 2020.

statistical significance beyond the level of substantial disparities anticipated in the Decree.[29] His work is reflected in Plaintiffs' comments on the QMRs and he was prepared to answer any questions about those analyses at the July 21, 2020 hearing. For the reasons mentioned by the Court, information Plaintiffs submitted supporting their initial request that Mr. Craig be compensated at the requested rate of $400 per hour,[30] and because of his ability to apply his statistical knowledge to the legal issues in this case, Plaintiffs request that his rate be increased to $400 per hour.

**Hours Reasonably Spent:**

The attached Declarations of Timothy B. Garrigan (***Exhibit 1***) and David Craig (***Exhibit 2***) attest to their billing practices, the accuracy of their attached billing records reflecting contemporaneously recorded time billed and the reasonableness of their conservatively billed time, including the exercise of billing judgment to ensure that unproductive time was appropriately discounted. From these records Plaintiffs estimate that much of the approximately 271 hours I billed was particularly related to recovering fees,[31] monitoring under the terms of the

---

[29] See the Garrigan Declaration at paragraph 19, Exhibit 1 hereto, and the Craig Declaration at paragraphs 8 and 11, Exhibit 2 hereto.

[30] See Plaintiffs' Fee Motion at Dkt 382 and supporting materials, including: its Exhibit 2, the Declaration of David Craig at Dkt 382-2; its Exhibit 4, the Declaration of Jane Swanson at Dkt 382-4, esp. para. 6; its Exhibit 1, the Declaration of Timothy B. Garrigan, Dkt 382-1, esp. at para. 17, and; its Exhibit 3, the Declaration of Otis Carroll at Dkt 382-3, at para. 4 ("If anything, the rate of $500 per hour for representing plaintiffs in complex civil rights litigation in the Eastern District of Texas is too modest to ensure that capable lawyers will be available to represent plaintiffs with meritorious claims in this type of litigation.").

[31] As this Court has repeatedly recognized in awarding fees in this case (inter alia, Dkt 328 at p. 20), time spent recovering fees is compensable. See also *Cruz v. Hauck*, supra, 762 F.2d at 1233. Surely Defendants understood the costs of resisting payment of fees after a certified class obtained a comprehensive decree. The City Defendants' resistance to paying, or even negotiating, fees foreseeably increased Plaintiffs' efforts to recover fees.

9

Decree,[32] and obtaining and negotiating for amendment of the initial Decree, including a second term.[33] A few of these hours sought to be compensated were spent negotiating and obtaining settlement of the County Defendants' obligation for fees and attempting to similarly negotiate with the City Defendants. All of the fees billed and sought are for tasks established to be compensable. It is reasonable for Plaintiffs to bill these hours.

**The Lodestar Amount, adjusted further to account for the County Defendants' fee settlement:**

As already mentioned above, the product of the hours reasonably billed times the reasonable hourly rates requested produces a total lodestar amount of $130,553.33, which Plaintiffs reasonably reduce by $42,000, to $88,553.33, to avoid double billing for fees already negotiated and paid by the County Defendants.

***Johnson*** **and other factors that might justify adjustment to the lodestar:**

*Johnson v. Georgia Highway Express, Inc.* 488 F2d 714, 717-719 (5th Cir. 1974) includes recognized factors considered in adjusting the lodestar in awarding fees.[34] Other factors not already considered in calculating a lodestar amount that reflect on the reasonableness of an

---

[32] As has also been mentioned by the Court in this case, a prevailing plaintiff is entitled to recover reasonable fees for monitoring and other activities anticipated by the terms of a decree the parties have agreed to. See, inter alia, Dkt 328 at p. 4-5, 7-11 (citing controlling statutory and case law as well as agreements of the parties). See also, *Frew v. Traylor*, 688 Fed.Appx. 249, 256-257 (5th Cir. 2017) (It is beyond any reasonable contrary argument that fees are recoverable for work arising from a process anticipated and negotiated for in a decree.) The Defendants' aggressive resistance to paying fees increased, and made necessary, Plaintiffs' effort recovering fees.

[33] *Frew v. Traylor*, 688 Fed.Appx. at 251. Obtaining an order supplementing a previously obtained decree (there, a 2007 Corrective Action Order supplementing a decree entered in 1996) is not just compensable, it re-establishes plaintiffs' prevailing party status for purposes of awarding reasonable fees for work anticipated in the supplemental relief obtained.)

[34] The Supreme Court has noted that the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Perdue*, 559 U.S. at p. 553. As a result, a party seeking departure from the lodestar must produce specific evidence supporting any adjustment sought. Id.

award may also be considered in adjusting the lodestar amount. For instance, Plaintiffs here ask that the award be adjusted from the lodestar amount to avoid double billing for fees already paid by the County Defendants, which was it already a consideration in calculating the lodestar. *Plaintiffs are not requesting any enhancement of the lodestar at this time.*

In light of *Jimenez v. Wood County, Tex.*, 621 F.3d at p. 380, the *Johnson* factors are addressed immediately below, as numbered in the *Johnson* decision, and do not support an adjustment to the lodestar:

***Johnson* factors #1, #3, #5, #7 and #9 are already considered in the lodestar analysis:**

The time and labor required (#1), skill requisite to perform the legal service properly (#3), customary fee (#5), contingent nature of the fee (#6) and experience, reputation and ability of the attorney (#9) are usually subsumed in the time and rate components of the lodestar analysis and do not suggest additional adjustment of the lodestar amount in this instance.

***Johnson* factor #2 – Novelty of the case and difficulty of the questions:**

The novelty of the case and difficulty of question(s) might hypothetically weigh in favor of an upward adjustment to the lodestar. The facts and law pertinent to the Decree are largely unique to this case and govern monitoring, enforcement and compliance, so are not likely to arise in other cases. But these factors are already captured in the time and rate components of the lodestar calculation, so Plaintiffs do not seek upward adjustment of the lodestar for these factors.

***Johnson* factors #4 and #7 – Preclusion of other work and time limitations:**

The preclusion of other work (#4) and pertinent time limitations (#7) can weigh in favor of an upward adjustment to a lodestar amount. While the vast majority of the Plaintiffs'

11

counsels' work can be described as contingent fee civil rights cases, taking on a complex class action interrupts the flow of non-class lawsuits that tend to resolve more quickly and create more reliable revenue to support a law practice. However, while Plaintiffs seek to recover their counsels' fees from the City Defendants, they do not at this time seek an upward adjustment for this factor.

*Johnson* factor #8 – Results Obtained:

The overall legal results obtained in this case are excellent, as demonstrated by the class certification, comprehensive relief obtained in the initial Decree, the agreed and contested fees already recovered, the additional duration of Court oversight and other additional relief obtained in the Amended Decree, and Plaintiffs' success in opposing Defendants' non-compliant use of canines. The results have also undeniably been of significant benefit to the class: the Court has found that the purposes of the Consent Decree have been fulfilled and ensure that the Defendants' law enforcement officers pursue their duties with morality and integrity. However, Plaintiffs do not seek an enhancement for the success obtained.

*Johnson* factor #10 – Undesirability:

While the case presented many difficulties, it did not present any sort of social hostility in the community or among legal professionals generally. To the contrary, the public seems to have largely appreciated the need for this case to address an appalling abuse of police practices that was not addressed by the normal checks and balances relied on to prevent such official abuses. The Defendants have largely refused to negotiate or settle any aspect of Plaintiffs' fees, putting the Plaintiffs in the awkward position of repeatedly filing contested fee motions that require the Court's limited time and attention: a defendant's willingness to force such burdens on the Court does make this case less desirable. However, the Court has consistently recognized Plaintiffs'

efforts to obtain fees are compensable and awarded them accordingly, so that the lodestar calculation already captures this consideration and Plaintiffs do not seek enhancement based on this factor.

***Johnson* factor #11 – Relationship with the Client(s):**

Prior to this case there was no relationship between counsel and the class. Class Counsel has also represented several class members with related individual monetary claims that have been resolved. This factor would not support any adjustment of the lodestar.

***Johnson* factor #12 – Awards in similar cases:**

The lodestar sought is consistent with other awards in similar cases, which the Court has already considered. As a result, this factor supports the lodestar, but not an adjustment to the lodestar.

**Other factors not already considered in the proposed lodestar calculation:**

Because the County Defendants paid $42,000 to settle their obligation to pay some of the fees earned during this billing period, Plaintiffs have already subtracted that amount from the lodestar amount in seeking an award of the unpaid amount of $88,553.33 to be paid by the City Defendants for the period. Plaintiffs also take this opportunity to remind the Court that, while there is no shortage of competent counsel handling complex litigation in the Eastern District, relatively few represent plaintiffs in civil rights cases in the Eastern District.

## CONCLUSION:

For the reasons stated above, Plaintiffs request that Defendants be ordered to pay Plaintiffs' attorneys' the fees sought in this Motion in the total amount of $88,553.33, instanter. Plaintiffs also suggest that the Court include post-award interest sufficient to discourage further resistance and delay.

Respectfully submitted,

/s/ Timothy B. Garrigan
Timothy B. Garrigan
Bar Card No. 07703600
Stuckey & Garrigan Law Offices, PLLC
2803 North Street, Suite C
Nacogdoches, TX 75965
Tel: 936-560-6020
Fax: 936-560-9578
Email: tim@sgclaw.org

Attorney-for Plaintiffs, James Morrow and certified class.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document and all attachments is being served by the ECF system on opposing counsel of record herein on March 17, 2021.

/s/ Timothy B. Garrigan
Timothy B. Garrigan

## CERTIFICATE OF CONFERENCE

The undersigned has addressed the subject of this Motion with Defense Counsel Erika Neill (representing the City Defendants) and Chad Rook (representing the County Defendants) on several occasions during telephone calls and in emails. During a phone call on March 9, 2021, Mr. Rook's position was that his clients had no live disputes in this case, they did not anticipate taking any positions regarding the fees sought in this Motion and did not anticipate filing an opposition or other responsive brief. During December, 2020, and January, 2021, the undersigned spoke with Ms. Neill during several phone calls, and exchanged several emails, concerning the fees that are a subject of this Motion. On January 26, 2021 Ms. Neill definitively wrote in an email that her client would not agree to pay any of the fees billed for Plaintiffs' counsels' efforts covered by this Motion. For those reasons, no agreement could be reached, and discussions ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Timothy B. Garrigan
Timothy B. Garrigan