IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JAMES MORROW, STEPHEN STUART WATSON, AMANEE BUSBY, YUSELFF DISMUKES, LINDA DORMAN, MARVIN PEARSON, JENNIFER BOATWRIGHT, RONALD HENDERSON, JAVIER FLORES, WILLIAM FLORES,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF TENAHA DEPUTY CITY MARSHAL BARRY WASHINGTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; CITY OF TENAHA MAYOR, SHELBY COUNTY DISTRICT ATTORNEYS OFFICE, SHELBY COUNTY PRECINCT 4 CONSTABLE RANDY WHATLEY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY; SHELBY COUNTY DISTRICT ATTORNEY INVESTIGATOR DANNY GREEN, IN HIS INDIVIDUAL CAPACITY ONLY; AND SHELBY COUNTY,<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § |  CIVIL ACTION NO. 2:08-CV-00288-JRG |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Contested Motion for Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from April 1 Through December 31, 2020 ("Fourth Fees Motion") (Dkt. No. 415.) Having considered the Fourth Fee Motion and the related briefing, the Court is of the opinion that the Motion should be and hereby is **GRANTED-AS-MODFIED**.

## I. BACKGROUND

On July 24, 2008, Plaintiff James Morrow and a proposed class of others similarly situated ("Plaintiffs") filed suit against Defendants City of Tenaha Deputy City Marshal Barry Washington, City of Tenaha Mayor[1], Shelby County District Attorneys Office, Shelby County Precinct 4 Constable Randy Whatley, Shelby County District Attorney Investigator Danny Green, and Shelby County[2] (collectively, the "Defendants") under 42 U.S.C. § 1983, alleging that Defendants' actions violated the Fourth Amendment's prohibition against unreasonable searches and seizures and the Fourteenth Amendment's Equal Protection Clause. (Dkt. No. 1; Dkt. No. 111 at 1–2.)

On August 29, 2011, this Court certified the Plaintiff class for injunctive and declaratory relief. (Dkt. No. 233 at 2.) Pursuant to Federal Rule of Civil Procedure 23(b)(2), the Court certified the following class:

> (1) People who are, or appear to be, members of racial or ethnic minority groups and those in their company, and
> (2) Were, or will be, traveling in, through, or near Tenaha, Texas at any time after November 1, 2006, and
> (3) Were stopped, or will be subject to being stopped, by one or more Defendant for an alleged traffic violation.

(*Id.* at 57.) The Parties ultimately negotiated a settlement agreement consisting primarily of a consent decree, which required Defendants to follow detailed and monitored procedures for a period of years to ensure that Defendants' future policing practices did not result in the same or similar illegal traffic stops, detentions, searches, and seizures alleged in the lawsuit ("the Consent Decree") (Dkt. No. 278–1, Ex. A). The Consent Decree requires a court-appointed Monitor to oversee compliance efforts and produce quarterly reports to be reviewed by the Parties prior to

---

[1] Defendants City of Tenaha Deputy City Marshal Barry Washington and the City of Tenaha Mayor shall be referred to as the "City Defendants."
[2] Defendants Shelby County District Attorneys Office, Shelby County Precinct 4 Constable Randy Whatley, Shelby County District Attorney Investigator Danny Green, and Shelby County shall be referred to as the "County Defendants."

submission. (*Id*. at 21.) According to the Consent Decree, the Monitor must provide a draft of each quarterly report to the Parties, prior to submission to the Court. (*Id*. at 23.) The Parties have thirty days to review and confer regarding "any aspect of the draft Report and Recommendation, and to provide comments regarding same to the Monitor." (*Id*.) In addition, under the Consent Decree, Defendants are responsible for the reasonable costs and fees of the Monitor. (*Id*. at 24.) The Parties agreed "to exercise their best efforts and to take all reasonable steps necessary to effectuate the Consent Decree." (*Id*.) On December 6, 2018, the Court granted the Parties' joint nomination of John Malcolm Bales[3] as the Monitor. (Dkt. No. 353.) The Consent Decree was extended in January 2019 for an additional term of 18 months through July 2020. (Dkt. Nos. 278-1, 363.) After such extension, on July 17, 2020, Plaintiffs filed an Opposed Motion for a Second Additional Term of the Decree. (Dkt. No. 398.) The Court denied the Motion for Second Additional Term of the Decree. (Dkt. No. 409.) Accordingly, the Consent Decree expired in July 2020. On October 14, 2020, the Court was advised that Plaintiffs and the County Defendants had fully settled their disputes, including any sums due to Plaintiffs' counsel from the County Defendants. (Dkt. No. 411.)

Over the course of this matter, Plaintiffs have filed four motions seeking the recovery of attorneys' fees and expenses incurred in connection with the enforcement of the Consent Decree. The Court previously granted Plaintiffs' Motion for an Award of Interim Attorneys' Fees and Expenses for the Period of September 10, 2013 to August 31, 2016. (Dkt. No. 328.) As a part thereof, Plaintiffs were awarded $35,339.94 in attorneys' fees and expenses. (*Id*.) Plaintiffs also sought attorneys' fees and expenses for the period from September 2016 through April 2019 (Dkt. No. 364), as well as for the period of May 1, 2019 through March 31, 2020. (Dkt. No. 382.) The

---

[3] Mr. Bales is a former United States Attorney for this district.

Court granted, in part, those motions and awarded Plaintiffs an additional $289,433.96 in attorneys' fees and expenses. (Dkt. No. 410.) Plaintiffs subsequently filed their Fourth Fees Motion on March 17, 2021 seeking the recovery of $88,553.33 in attorneys' fees. (Dkt. No. 415.) The Court previously denied the Fourth Fees Motion on the basis that it was untimely; however, the Fifth Circuit vacated that decision and remanded it for further proceedings consistent with their opinion. (Dkt. Nos. 422, 435). The Court now reconsiders the Fourth Fee Motion in light of the guidance from the Fifth Circuit and the record before it.

## II. AUTHORITIES

### A. Legal Basis for Award of Fees and Expenses

Under 42 U.S.C. § 1988(b), in an action to enforce a provision of 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988(b) limits fee awards to the "prevailing party," which is generally considered as the party who "has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit" and one who "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 767 (5th Cir. 1996) (citations omitted). "[F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S. Rep. No. 94–1011, 94th Cong. 2d Sess. 5 (1976), reprinted in (1976) U.S. Code Cong. & Admin. News, pp. 5908, 5912. *See Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977).

Several courts have held that, in the context of 42 U.S.C. § 1988, post-judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee.

4

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1987) (collecting cases); *see also Alberti v. Klevenhagen*, 896 F.2d 927, 932–34 (5th Cir. 1990) (reviewing an interim attorneys' fees order in the context of ongoing monitoring of a consent decree), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990).

### B. Scope of a Consent Decree

Where a dispute arises regarding the scope of the consent decree, "[g]eneral principles of contract interpretation govern the interpretation of a consent decree." *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349–50 (5th Cir. 1998); *see also Frew v. Janek*, 780 F.3d 320, 327–28 (5th Cir. 2015). Thus, consent decrees are to be construed only by reference to the "four corners" of the order itself. *Chromalloy*, 158 F.3d at 350. Furthermore, the court "look[s] to state law to provide the rules of contract interpretation." *Frew*, 780 F.3d at 327 n.28 (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996)). Courts have applied Texas law in cases involving consent decrees concluded between Texas parties. *See, e.g.*, *Frew*, 780 F.3d at 327–28; *El Paso v. El Paso Entm't, Inc.*, 464 App'x 366, 372 (5th Cir. 2012) (per curiam) (unpublished).

### C. Determination of Fees Under 42 U.S.C. § 1988

Under § 1988, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing S. Rep. No. 94–1011, p. 4 (1976)). "In computing the fee, counsel for prevailing parties should be paid, as traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" *Id.* at 430 n.4 (citations omitted).

The determination of a fees award is a two-step process. *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011). First, the court calculates

the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id*. In calculating the lodestar, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Id*. at 379–80. Once the lodestar amount is calculated, the court may enhance or decrease it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id*. at 380. In *Johnson*, the Fifth Circuit laid out twelve factors to be considered in deciding whether the lodestar ought to be adjusted. 488 F.2d at 717–19. Those factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. "The court must provide a 'reasonably specific explanation for all aspects of a fee determination.'" *Id*. (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010)).

### III.   ANALYSIS

For the period from April 1 through December 31, 2020, Plaintiffs request interim attorneys' fees in the amount of $88,553.33 for specific hours billed.[4] (Dkt. No. 415.) Plaintiffs represent that under Fifth Circuit law, because they obtained a Consent Decree, they are the prevailing party for the purposes of awarding fees. (*Id*. at 6.)

In addition to the arguments already considered by the Court, Defendants argue the Court should substantially reduce the fees sought by Plaintiffs' counsel because (1) the hours for which Plaintiffs seek to recover fees were not reasonably expended; (2) Plaintiffs' counsel's work did

---

[4] The Consent Decree expired in July 2020, and a prior fee application which the Court granted earlier covered efforts and expenses by Plaintiffs through March 31, 2020.

not result in success; and (3) the nature of the lawsuit is no longer novel or complex. (Dkt. No. 418 at 9–12.)

The Court has already determined that Plaintiffs may be awarded reasonable fees for post-decree work in this case. (Dkt. No. 328 at 10–11.) In determining what amount of fees should be awarded to Plaintiffs under 42 U.S.C. § 1988, the Court now considers the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez*, 621 F.3d at 379. The Court will next determine whether the lodestar should be adjusted upward or downward by considering the *Johnson* factors. 488 F.2d at 717–19.

### A. Reasonable Hourly Rates

Attorneys' fees awards in civil rights cases facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "Fee awards must, however, be reasonable." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Reasonable hourly rates" are to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This burden lies on the applicant. *Id.* at 896. Such requested rates must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 896 n.11.

Mr. Timothy Garrigan billed his time at $500 an hour. (Dkt. No. 415 at 5.) Mr. David Craig billed his time at $400 an hour. (*Id.*) Mr. Garrigan and Mr. Craig submitted declarations in support of these rates. (Dkt. Nos. 415–1, 415–2.)

The City Defendants dispute the rates on the grounds that the hourly rates are not reasonable in light of the nature and complexity of the work performed by Plaintiffs' counsel. (Dkt.

No. 418 at 12.) The Court previously found that Mr. Garrigan's bills relate to less complex tasks that must be performed under the Consent Decree. (Dkt. No. 410 at 9.) Indeed, the Court found that "such tasks do not require the skill—or billing rates—of a highly accomplished complex class action litigator." (*Id.*). This Court previously determined that $450.00 an hour was a reasonable rate for Mr. Garrigan's work. (*Id.*) Similarly, the Court previously found support for and approved an hourly rate of $350.00 for Mr. Craig and found that "while Mr. Craig has garnered more experience and therefore likely will command a higher rate in the market as time progresses, there is no indication his duties in this case have appreciably changed." (*Id.*)  Given that the degree of complexity of counsel's work (i.e., the enforcement of the Consent Decree) has not appreciably changed, the Court sees no reason to deviate from its prior decision and therefore finds that a rate of $450 an hour for Mr. Garrigan's work and a rate of $350 an hour for Mr. Craig's work to be reasonable.

### B. Hours Reasonably Expended

Plaintiffs have submitted schedules detailing the hours claimed to have been expended in connection with the monitoring-related efforts of Mr. Garrigan and Mr. Craig.  (Dkt. Nos. 415-1 and 415-2.)  The Court has extensively reviewed these time entries and now addresses the City Defendants' objections.  *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) ("[T]he court should exclude all time that is excessive, duplicative, or inadequately documented.").

The City Defendants object to Plaintiffs' fee application on the grounds that Plaintiffs' counsel's work was not reasonably expended. (Dkt. No. 418 at 9–12.) In particular, the City Defendants contend that the hours spent preparing Plaintiffs' previous fee application (37 hours drafting the application and 27 hours drafting a reply brief) were excessive and did not yield a successful result as Plaintiffs' application was reduced by 20% and Mr. Craig's requested rate

increase was rejected. (*Id*.). The City Defendants further note that they should not be responsible for paying the fees incurred by Plaintiffs which implicate or relate to the County Defendants who have heretofore fully settled with Plaintiffs.[5] (*Id*.) Finally, Defendants challenge the time Plaintiffs' counsel spent reviewing the quarterly monitor reports as "excessive." (*Id*. at 11, 12.)

Mr. Garrigan purports to have billed 217 hours and 52 minutes during the applicable time period. (Dkt. No. 415–1 at 18). He purports to have worked additional hours on this matter which were not included in the timesheet based on Mr. Garrigan's exercise of billing judgment. (*Id*. at 4.) The hours allegedly worked but not billed by Mr. Garrigan are discussed in greater detail below. Mr. Craig purports to have billed 54 hours during the applicable time period. (Dkt. No. 415–2 at 7,8.) Mr. Craig estimates that his billing records "reflect [an] exercise of billing judgment reducing [his] billed time by over 5 hours." (*Id*. ¶ 17.) The fees sought by Plaintiffs can be divided into three categories of time: (1) hours expended in connection with the pursuit and recovery of attorneys' fees, (2) hours related to the monitoring of Defendants' compliance with the Consent Decree, and (3) hours expended on other matters, including the Plaintiffs' negotiation of a settlement with the County Defendants. As set forth below, the Court is of the opinion and finds that the only hours Plaintiffs have demonstrated which were reasonably expended in connection with the City Defendants (and recoverable hereunder) were hours related to the recovery of attorneys' fees and the monitoring of the Defendants' compliance with the Consent Decree.

The Court first considers the hours expended by Plaintiffs' counsel in connection with this fourth fee application. Mr. Garrigan purports to have "billed about 80 hours, of about 95 hours worked, seeking contested fees." (Dkt. No. 415–1 at 4). A review of Mr. Craig's timesheet reflects

---

[5] The County Defendants settled all disputes with Plaintiffs, including compensation due to Plaintiffs' counsel and reimbursement of expenses, prior to October 14, 2020 when Plaintiffs advised the Court of their settlement. (Dkt. No. 411).

that he spent approximately 10.6 hours seeking contested fees. (Dkt. No. 415–2 at 7,8.) Of the 90.6 hours billed, Plaintiffs' counsel allegedly expended 37 hours drafting the fee application and 27 hours drafting a reply brief.[6] If true, that means Plaintiffs' counsel spent the balance of their time (approximately 26 hours) from April through December 2020 on other time keeping matters. The Court finds the hours expended by Plaintiff in connection with the recovery of attorneys' fees to be excessive and unreasonable. Based on its long history with this case, a review of the briefing related to the Fourth Fees Motion, and a scrupulous review regarding the sufficiency (or the lack thereof) of Plaintiffs' billing records and declarations, the Court is of the opinion that of the 90.6 hours expended by Plaintiffs' counsel in connection with the recovery of attorneys' fees, no more than 50% of said time should accurately reflect the amount of time needed to manage Plaintiffs' billing records and reasonably seek the fees at issue. 45.3 hours is a fair and reasonable amount of time to have spent accomplishing these tasks.

With respect to Plaintiffs' request for fees related to monitoring Defendants' compliance with the Consent Decree, Mr. Garrigan purports to have spent 34 hours "reviewing pertinent documents and commenting on the 4th QMR[7]" but "reduced the billing for this activity to 26 hours." (Dkt. No. 415–1 at 4). Mr. Garrigan further purports to have expended 50 hours "reviewing and commenting on the 5th QMR, from which [he] eliminated about 15 hours from billing as a matter of billing judgment." (*Id*.) Mr. Craig appears to have billed approximately 30.6 hours related to review and commenting on the same QMRs. These review efforts essentially involved reviewing and commenting on two short reports prepared by the Monitor, totaling 33 pages combined. *See* (Dkt. No. 292-1 (6-page 4th QMR with 11 pages of attachments)); (Dkt. No. 294-1

---

[6] The descriptions in Plaintiffs' timesheets are vague, often cryptic, and confusing. It is challenging for the Court to ascertain with precision the accuracy of these figures. The City Defendants' response effectively makes this same point.
[7] QMR is the Monitor's quarterly report to the Parties regarding implementation of the Consent Decree by Defendants.

(5-page 5th QMR with 11 pages of attachments)). The Court does not find that all of Plaintiffs' counsel's more than 90 hours of time spent reviewing and reporting on the Monitor's two QMRs is reasonable. As this case has gone on over many years, Plaintiffs' counsel's review and reporting on the QMRs should have become more efficient. Such does not appear to be the case from the 61 hours billed by Mr. Garrigan and the 30.6 hours billed by Mr. Craig in reviewing and commenting on the 4th and 5th QMRs. Furthermore, as the years have passed and the original actors (police officers and local officials) have changed their successors should be much easier to monitor, meaning that Plaintiffs' counsel's review of the QMRs likewise should have become easier and less time consuming. Accordingly, the Court finds that a reduction of 20% in time billed for work on the QMRs to be reasonable.[8]

Finally, regarding the time expended in connection with the negotiated settlement between the Plaintiffs and the County Defendants, the City Defendants are not responsible for the reimbursement of such fees. Instead, any fees incurred by the Plaintiffs in connection with those negotiations were a part of Plaintiff's settlement proceeds received from the County Defendants and should not be borne by the City Defendants. Based on a review of Mr. Garrigan's declaration and time records, it is impossible to ascertain how much time was actually spent negotiating with the County Defendants. Although Mr. Garrigan claims that this fee application includes time spent "obtaining and negotiating for amendment of the initial Decree, including a second term," briefing related to the extension of the Consent Decree from January 2019 through July 2020 was prepared and filed well before commencement of the time period covered by the Fourth Fees Motions. Mr. Garrigan also appears to have spent time preparing the Plaintiffs' Motion for a Second Additional Term of the Decree, which the Court denied. (Dkt. Nos. 398, 409.) Said another way, apart from

---

[8] Had Plaintiffs' counsel not exercised billing judgment, a greater reduction would be appropriate.

the time expended by Mr. Garrigan related to the recovery of attorneys' fees (80 billed hours), preparation for the April status conference (7 billed hours), and time associated with QMR review and reporting (61 hours), the remaining 69 hours or so of time in Mr. Garrigan's time records must pertain to either Plaintiffs' efforts to continue the Consent Decree[9] or relate to Plaintiffs' settlement negotiations with the County Defendants. In either case, such fees are not recoverable from the City Defendants. To the extent such time concerns other work performed by Plaintiffs, Plaintiffs' time records and declarations do not demonstrate that such time was reasonably expended, or that such work was attributable to the City Defendants. It remains Plaintiffs' burden to present time records and supporting evidence that documents clearly efforts related to properly recoverable work hereunder. Plaintiffs have failed to meet this burden with respect to their self-described "other work" discussed above.

Plaintiffs request that the lodestar amount be reduced by $42,000 which, according to Plaintiffs, reflect the fees negotiated and paid by the County Defendants. (Dkt. No. 415 at 10.) The Court agrees that the lodestar amount should be reduced in light of the payment received by Plaintiffs from the County Defendants. Accordingly, the Court shall reduce the Lodestar by the amount requested by the Plaintiffs.

### C. The *Johnson* Factors

Once the lodestar is determined, the Court may adjust the lodestar upward or downward if the Johnson factors, not included in the reasonable fee analysis, warrant the adjustment. *Snipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). As lodestar enhancements are generally reserved for "exceptional"

---

[9] In light of Plaintiffs' lack of success related to its efforts to extend the Consent Decree, attorneys' fees for such efforts are not recoverable. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

circumstances, the Court declines to adjust the lodestar upward or downward. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554–55 (2010).

### D. Determination of Fees and Costs

The calculation of fess awarded is as follows:

| Interim Period | Fee Biller or Expense | Time | Rate | Total |
|---|---|---|---|---|
| April 1 through December 31, 2020 | Mr. Timothy Garrigan | 95.8 hours[10] | $450/hour | $43,110.00 |
|  | Mr. David Craig | 42.6 hours[11] | $350/hour | $14,910.00 |
|  |  |  | **MINUS SETTLEMENT AMOUNT** | ($42,000.00) |
|  |  |  | **TOTAL** | $16,020.00 |

---

[10] Mr. Garrigan originally submitted bills for 217.9 hours of time. This number of 95.8 hours has been calculated by applying a 50% reduction to the recoverable time related to the recovery of attorneys' fees (reduced from 80 hours to 40 hours), and a 20% reduction for QMR review and reporting (reduced from 61 hours to 48.8 hours). This also includes the 7 hours Mr. Garrigan billed preparing for and participating in an April 2020 status conference.

[11] Mr. Craig originally submitted bills for 54 hours of time. This number of 42.6 hours has been calculated by applying a 50% reduction to the recoverable time related to the recovery of attorneys' fees (reduced from 10.6 hours to 5.3 hours) a 20% reduction in the time spent on QMR review and reporting (reduced from 30.6 hours to 24.5 hours). This figure includes the 12.8 hours Mr. Craig billed for participation and preparation for hearings.

### IV.  CONCLUSION

Accordingly, the Court **GRANTS-AS-MODIFIED** Plaintiffs' Contested Motion for Award of Interim Attorneys' Fees and Costs Incurred During the Fee Period from April 1 Through December 31, 2020. (Dkt. No. 415.) The Plaintiffs are hereby awarded a sum of $16,020.00 in fees, to be paid by the City Defendants, *instanter*. The Clerk of Court is directed to **CLOSE** the above-captioned case as the Consent Decree terminated in July 2020 and no parties or claims remain. Any outstanding claims or requests for relief not addressed herein are **DENIED-AS-MOOT**.

**So ORDERED and SIGNED this 23rd day of August, 2023.**

*[Signature]*
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE